No. 96,086

STATE OF KANSAS, *Appellee,* v. MICHAEL EDWARD LATURNER, *Appellant.*

(218 P.3d 23)

Opinion filed October 9, 2009.

*Rachel L. Pickering*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Jared S. Maag*, deputy solicitor general, argued the cause, and *Kristafer R. Ailslieger*, assistant solicitor general, *Garth L. Adams*, assistant county attorney, *Steve Six*, attorney general, and *Paul J. Morrison* and *Phill Kline*, former attorneys general, were with them on the briefs for appellee.

The opinion of the court was delivered by

LUCKERT, J.: In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 174 L. Ed. 2d 314, 129 S. Ct. 2527 (2009), the United States Supreme Court recently held that the admission of a forensic laboratory certificate of analysis without the testimony of the analyst, as allowed by a Massachusetts statute, violates a criminal defendant's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. In this case, we apply that holding to a similar Kansas statute, K.S.A. 22-3437, and determine whether the statute undermines the Confrontation Clause by permitting the use of an analyst's certificate in lieu of testimony if the State has given notice of its intent to use the certificate and the defendant has not objected or, if the defendant has objected, by providing that the "certificate shall be admitted in evidence unless it appears from the notice of objection and grounds for that objection that the conclusions of the certificate, including the composition, quality or quantity of the substance submitted to the laboratory for analysis . . . will be contested at trial." K.S.A. 22-3437(3).

## FACTS AND PROCEDURAL HISTORY

Michael Edward Laturner was arrested and charged with possession of methamphetamine, possession of drug paraphernalia, and making a criminal threat. The State filed a pretrial notice of intent to admit into evidence a Kansas Bureau of Investigation (KBI) laboratory analyst's certificate reporting the results of forensic testing. The certificate and accompanying forensic report, which contained an analysis of the contents of four plastic bags, concluded that three of the four bags contained methamphetamine.

Before trial, Laturner filed an objection to "any reports from the Kansas Bureau of Investigation being admitted into evidence without the forensic scientist being present in person." He specified that the report indicated methamphetamine was detected in three of the four bags tested, but the report was unclear about which bags. Laturner further complained that the certificate of analysis did not explain what equipment was used by the forensic scientist. The district court denied Laturner's objection, finding it went "to the weight and not the admissibility of the evidence."

A jury found Laturner guilty of possession of methamphetamine and possession of drug paraphernalia, acquitting him of the criminal threat charge.

On appeal, citing *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), Laturner raised the Confrontation Clause issues now before this court, as well as issues related to the jury instruction on possession of methamphetamine, the consideration of his criminal history during sentencing, and the "reassessment" of the attorney fees. The Court of Appeals rejected Laturner's instruction, sentencing, and attorney fee arguments but reversed Laturner's convictions based on the violation of his right of confrontation in *State v. Laturner*, 38 Kan. App. 2d 193, 163 P.3d 367 (2007).

In ruling on the Confrontation Clause issues, the Court of Appeals first determined that Laturner had preserved the issues. In addition, the Court of Appeals held the laboratory report and accompanying certificate of analysis, which contained only the con-

clusions from the tests, was testimonial for Confrontation Clause purposes and also held that K.S.A. 22-3437(3), which requires the defendant to assert an objection or waive the right of confrontation and gives the district court the authority to evaluate the defendant's objections, undermines the criminal defendant's right of confrontation. In so ruling, the Court of Appeals severed K.S.A. 22-3437(3) when it applies in a criminal case and determined that the remaining statutory language—*i.e.*, K.S.A. 22-3437(1) and (2)—leaves behind a "workable procedure." 38 Kan. App. 2d at 205-06.

The State sought this court's discretionary review of the Court of Appeals decision. After this court granted review, the State moved to stay further proceedings because the United States Supreme Court had granted the petition for certiorari in *Commonwealth v. Melendez-Diaz*, 69 Mass. App. 1114, 870 N.E.2d 676 (2007), *cert. granted* 170 L. Ed. 2d 352 (2008), *rev'd sub nom. Melendez-Diaz v. Massachusetts*, 557 U.S. 305. The State argued that *Melendez-Diaz* would decide the question of whether the Confrontation Clause is violated when a forensic laboratory analyst's certificate is admitted into evidence without testimony. We did not stay the oral arguments in this case but, after the State established Laturner was not in custody, subsequently stayed a decision pending the Supreme Court's decision.

On June 25, 2009, the United States Supreme Court issued its decision in *Melendez-Diaz*, following which this court issued an order granting the parties until August 3, 2009, to file supplemental briefs. In that order, we suggested that "[t]he parties may also want to address the possible implications of *Magruder v. Commonwealth of Virginia*, 275 Va. 283, 657 S.E.2d 113 (2008), *cert. granted* [*sub nom. Briscoe v. Virginia*, 557 U.S. 933] (June 29, 2009)." The Virginia decision addressed the question of whether a Virginia statute that allows the admission of a certificate of forensic laboratory analysis into evidence violates the Confrontation Clause, and the United States Supreme Court granted the petition for certiorari just 4 days after its decision in *Melendez-Diaz*.

Additional briefs were filed by the State and Laturner relating to *Melendez-Diaz* and *Briscoe*. After review of the briefs, the court concludes additional oral arguments are not necessary.

## GENERAL PRINCIPLES

The Sixth Amendment, made applicable to the States via the Fourteenth Amendment to the United States Constitution, *Pointer v. Texas*, 380 U.S. 400, 403, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965), provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

Under the Confrontation Clause, the right to confront a witness is satisfied when a defendant has the opportunity to cross-examine a witness. Conversely, a possible Confrontation Clause violation arises if an out-of-court declaration is admitted into evidence in lieu of the declarant's testimony and, therefore, without the defendant's opportunity to question the declarant; but the admission of the statement without cross-examination is not a per se violation of the Confrontation Clause. Unfortunately, it can be a challenging task to sort the situations where the admission of a statement is a Confrontation Clause violation from those where it is not, especially because the United States Supreme Court has altered the test and application of the new test is fraught with unresolved questions, including the one in this case. See *State v. Brown*, 285 Kan. 261, 282-83, 173 P.3d 612 (2007).

When K.S.A. 22-3437, which allows the use of a forensic analyst's certificate in lieu of the analyst's testimony, was adopted by the Kansas Legislature (L. 1993, ch. 261, sec. 3), the interplay between out-of-court statements and the Confrontation Clause was controlled by the decision of *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980), *overruled by Crawford*, 541 U.S. 36. Under the holding of *Roberts*, admission of a statement made by an unavailable witness, even if admitted for the truth of the matter asserted in the statement, did not violate confrontation rights if the evidence contained adequate guarantees of trustworthiness or indicia of reliability. *Roberts*, 448 U.S. at 66.

The *Roberts* approach was limited by the Court in *Crawford* because the test had led to unpredictability and did not reflect a historically accurate view of the intent of the Constitution's framers. *Crawford*, 541 U.S. at 61-69. In adopting a new test, the Court reasoned that confrontation rights attach whenever a witness bears

testimony, which the Court defined as " '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' [Citation omitted.]" *Crawford*, 541 U.S. at 51. Under *Crawford's* holding, any testimonial statement is barred unless the witness is "unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 54.

The Supreme Court described the class of testimonial statements covered by the Confrontation Clause by stating:

"Various formulations of this core class of 'testimonial' statements exist: '*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' [citation omitted]; 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' [citation omitted]; [and] 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' [Citation omitted]." *Crawford*, 541 U.S. at 51-52.

### 1. Is a K.S.A. 22-3437 Certificate Testimonial?

Applying the principles adopted in *Crawford*, in *Melendez-Diaz*, 557 U.S. 305, the United States Supreme Court considered whether a certificate prepared by a forensic laboratory analyst fell within the core class of testimonial statements. The issue arose in the same context as it does in this case. The prosecutor in *Melendez-Diaz* admitted into evidence several bags seized during the defendant's arrest plus three certificates prepared by laboratory analysts that reported the weight of the substance in each bag and stated that the bags " '[h]a[ve] been examined with the following results: The substance was found to contain: Cocaine.' " *Melendez-Diaz*, 557 U.S. at 308. The certificates were sworn to before a notary. As in this case, the analysts did not testify at trial.

Although the document reporting the laboratory analysis was labeled a "certificate" by the Massachusetts Legislature, the United States Supreme Court concluded such documents "are quite plainly affidavits: 'declaration[s] of facts written down and sworn to by the declarant before an officer authorized to administer oaths.' Black's Law Dictionary 62 (8th ed. 2004)." *Melendez-Diaz*,

557 U.S. at 310. As affidavits, the certificates were, according to the Court, included in the " 'core class of testimonial statements' " identified in the Court's decision in *Crawford*, 541 U.S. at 51, as the type of evidence which is subject to confrontation under the Sixth Amendment. The Court explained:

"The fact in question is that the substance found in the possession of Melendez-Diaz and his codefendants was, as the prosecution claimed, cocaine—the precise testimony the analysts would be expected to provide if called at trial. The 'certificates' are functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.' *Davis v. Washington*, 547 U.S. 813, 830, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

"Here, moreover, not only were the affidavits ' "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," ' *Crawford*, [541 U.S., at 52], but under Massachusetts law the *sole purpose* of the affidavits was to provide 'prima facie evidence of the composition, quality, and the net weight' of the analyzed substance, Mass. Gen. Laws, ch. 111, § 13. We can safely assume that the analysts were aware of the affidavits' evidentiary purpose, since that purpose—as stated in the relevant state-law provision—was reprinted on the affidavits themselves. [Citation omitted.]

"In short, under our decision in *Crawford* the analysts' affidavits were testimonial statements, and the analysts were 'witnesses' for purposes of the Sixth Amendment. Absent a showing that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to ' "be confronted with" ' the analysts at trial. [Citation omitted.]" *Melendez-Diaz*, 174 L. Ed. 2d at 321-22.

Similarly, in this case, a KBI laboratory analyst prepared a "certificate" that was labeled as a "Certificate of Analysis Pursuant to Kansas Statutes [K.S.A.] 22-3437 and [K.S.A.] 53-601." In the body of the certificate, the laboratory analyst "attested" to the chain of evidence procedures and stated her qualifications and experience. She then explained that approved methodologies had been followed and properly functioning equipment had been utilized. The "certificate" ended with the following statements:

"I certify that I am the Forensic Scientist who analyzed the test results and attest that the conclusion(s) on said Laboratory Report are, with reasonable scientific certainty, accurate.

"I declare, verify and certify under the penalty of perjury that the foregoing is true and correct."

The certificate, as its heading indicated, followed the form prescribed by K.S.A. 22-3437 and K.S.A. 53-601. K.S.A. 22-3437 authorizes the certificate, directs what the certificate must include, and establishes a procedure to be followed if a certificate is to be used as evidence. It states in part: "In any hearing or trial, a report concerning forensic examinations and certificate of forensic examination executed pursuant to this section shall be admissible in evidence if the report and certificate" are prepared by an analyst or technician employed by one of several listed governmental agencies, including the KBI. K.S.A. 22-3437(1). In addition, the statute directs that a certificate be prepared if requested by a law enforcement agency and further specifies the contents of the report, requiring the analyst to swear under oath to the following:

"The type of analysis performed; the result achieved; any conclusions reached based upon that result; that the subscriber is the person who performed the analysis and made the conclusions; the subscriber's training or experience to perform the analysis; the nature and condition of the equipment used; and the certification and foundation requirements for admissibility of breath test results, when appropriate." K.S.A. 22-3437(2).

The certificate in this case complied with those requirements.

The second statute listed in the heading of the KBI laboratory analyst's certificate, K.S.A. 53-601, provides that any matter stated in an unsworn statement "may be supported, evidenced, established or proved with the same force and effect" as a sworn statement, if the unsworn document includes a statement that " 'I declare (or verify, certify or state) under penalty of perjury that the foregoing is true and correct.' " K.S.A. 53-601(a)(2). Because the KBI analyst used these words, even though she did not take an oath, the certificate was effectively a sworn statement and the legal equivalent of an affidavit.

Therefore, we conclude that the KBI laboratory analyst's use of the language required by K.S.A. 53-601 and the form prescribed by K.S.A. 22-3437 along with the certificate's reference to those two statutes indicates the certificate was intended to be and was "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination' [, citation omitted,]" and was " ' "made under circumstances which would lead an ob-

jective witness reasonably to believe that the statement would be available for use at a later trial." ' [Citation omitted.]" *Melendez-Diaz*, 557 U.S. at 310-11. As such, the KBI laboratory analyst's certificate was testimonial, giving rise to Laturner's rights under the Confrontation Clause. Consequently, absent a showing that the KBI analyst was unavailable to testify at trial *and* that Laturner had a prior opportunity to cross-examine the analyst, Laturner was entitled to be confronted with the analyst at trial unless that right was waived. See *Melendez-Diaz*, 557 U.S. at 311.

## 2. Is K.S.A. 22-3437(3) Constitutional?

Waiver of the right to confront witnesses was also addressed in the *Melendez-Diaz* majority opinion, in which five of the justices joined. The majority addressed the topic in a portion of the opinion aimed at answering points made in the dissenting opinion, in which the four dissenters also discussed the concept. These discussions are relevant to the State's argument in this case that Laturner waived his right to confront the laboratory analyst by failing to comply with K.S.A. 22-3437(3). In response, Laturner argues that K.S.A. 22-3437(3) is unconstitutional.

### A. Standard of Review

The arguments relating to this issue require us to interpret K.S.A. 22-3437(3) and determine its constitutionality and, thus, present questions of law over which this court exercises unlimited review. *State v. Ortega-Cadelan*, 287 Kan. 157, 164, 194 P.3d 1195 (2008) (de novo review applies to statutory interpretation and questions of statute's constitutionality).

Whenever a court considers the constitutionality of a statute, the separation of powers doctrine requires the court to presume the statute is constitutional. *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 883-84, 179 P.3d 366 (2008). Consistent with this principle, all doubts must be resolved in favor of the statute's validity, and a court must interpret the statute in a manner that makes it constitutional if there is any reasonable way to do so within the apparent intent of the legislature in passing the statute. *State v. Johnson*, 286 Kan. 824, 842-43, 190 P.3d 207 (2008).

## B. Notice-and-Demand Statutes

K.S.A. 22-3437(3) is a form of a "notice-and-demand" statute. The United States Supreme Court generally described such statutes in *Melendez-Diaz*, stating:

"In their simplest form, notice-and-demand statutes require the prosecution to provide notice to the defendant of its intent to use an analyst's report as evidence at trial, after which the defendant is given a period of time in which he may object to the admission of the evidence absent the analyst's appearance live at trial. [Citations omitted.]" *Melendez-Diaz v. Massachusetts*, 557 U.S. at 326.

Continuing its discussion, the *Melendez-Diaz* Court stated that the simplest notice-and-demand statutes do not unconstitutionally impose a burden on the defendant but simply require a defendant to assert a Confrontation Clause objection within the time period specified by the particular statute. The majority observed:

"States are free to adopt procedural rules governing objections. [Citation omitted.] It is common to require a defendant to exercise his rights under the Compulsory Process Clause in advance of trial, announcing his intent to present certain witnesses. [Citations omitted.] There is no conceivable reason why he cannot similarly be compelled to exercise his Confrontation Clause rights before trial. See *Hinojos-Mendoza v. People*, 169 P.3d 662, 670 (Colo. 2007) (discussing and approving Colorado's notice-and-demand provision)." *Melendez-Diaz*, 557 U.S. at 327.

The case cited in this quotation, *Hinojos-Mendoza v. People*, 169 P.3d 662 (Colo. 2007), *cert. denied* 557 U.S. 934 (2009), discusses a Colorado statute that is an example of a notice-and-demand statute in its simplest form. The Colorado statute requires only that a defendant give notice at least 10 days before a trial that he or she is demanding the laboratory analyst's personal appearance at trial. The *Hinojos-Mendoza* court explained its rationale for finding this procedure constitutional by stating:

"Assuming the opportunity for confrontation is provided, the right to confrontation is not denied because the prosecution is allowed to present testimony which the defendant chooses not to cross-examine. [Citation omitted.] In other words, where a defendant chooses not to take advantage of the opportunity to cross-examine a witness, the defendant has not been denied his constitutional right to confrontation. The procedure provided in [Colo. Rev. Stat. §] section 16-3-309(5)

[2006] for ensuring the presence of the lab technician at trial does not deny a defendant the opportunity to cross-examine the technician, but simply requires that the defendant decide prior to trial whether he will conduct a cross-examination. The statute provides the opportunity for confrontation—only the timing of the defendant's decision is changed." *Hinojos-Mendoza,* 169 P.3d at 668.

Interestingly, the United States Supreme Court, which had been holding petitions for certiorari in *Hinojos-Mendoza* and *Briscoe* for some time, denied the petition in *Hinojos-Mendoza* and granted the petition in *Briscoe* just 4 days after filing the decision in *Melendez-Diaz.* While a denial of certiorari does not necessarily mean the Court agrees with the decision by the lower court in *Melendez-Diaz,* the majority seemingly agreed with the Colorado court's reasoning when it recognized the constitutionality of notice-and-demand statutes in their simplest form and further stated: "[T]he dissent believes that those state statutes 'requiring the defendant to give early notice of his intent to confront the analyst,' are 'burden-shifting statutes [that] may be invalidated by the Court's reasoning.' [Citation omitted.] That is not so." 557 U.S. at 326. Thus, although in what is arguably dicta, the majority approved the constitutionality of notice-and-demand statutes in their simplest form.

In applying that discussion to K.S.A. 22-3437(3), if one compares the Kansas and Colorado statutes there is some overlap. In other words, K.S.A. 22-3427(3) incorporates the features of a simple-form notice-and-demand statute and establishes the judicial procedure that must be followed if a laboratory analyst's certificate is to be used at trial. Under those provisions, if a party wishes to introduce a certificate and accompanying forensic report into evidence, notice must be given to the district court and opposing party at least 20 days before the trial or hearing. Along with the notice, the offering party must provide copies of the certificate and the reports relating to the analysis in question. Within 10 days of receiving the notice, the opposing party must assert any objection to the use of the certificate, and the failure to timely object "shall constitute a waiver of any objections to the admission of the certificate." K.S.A. 22-3437(3).

In addition to these provisions that overlap with those in the simplest form of a notice-and-demand statute, K.S.A. 22-3437(3)

imposes additional requirements. In particular, it requires not just that a defendant demand that the laboratory analyst testify at trial but that the defendant state an objection and the grounds for the objection. Further, it is not enough to state an objection based on the Confrontation Clause because the statute also provides:

"A proffered certificate shall be admitted in evidence unless it appears from the notice of objection and grounds for that objection that the conclusions of the certificate, including the composition, quality or quantity of the substance submitted to the laboratory for analysis or the alcohol content of a blood or breath sample will be contested at trial." K.S.A. 22-3437(3).

The trial court must rule whether the objection is sufficient at least 2 days before trial. K.S.A. 22-3437(3).

### C. Court of Appeals Decision

Without the benefit of the *Melendez-Diaz* decision, the Court of Appeals found all of K.S.A. 22-3437(3) unconstitutional because it "restricts the objections a defendant can assert to the admission of a lab report, requires the defendant to assert an objection or waive the right of confrontation, and gives the district court the authority to evaluate the defendant's objections." *State v. Laturner*, 38 Kan. App. 2d 193, 205, 163 P.3d 367 (2007). The Court of Appeals further explained:

"There is no doubt that this portion of the statute undermines a criminal defendant's Sixth Amendment right of confrontation as explained in *Crawford*. This provision of the statute permits the admission of a testimonial statement based on a judicial determination of reliability: a permissible practice under *Roberts* but not now under *Crawford*. Further, the defendant is deemed to have waived the Sixth Amendment confrontation right if the defendant fails to take affirmative steps to assert it. The United States Supreme Court and Kansas appellate courts disapprove of waivers of Sixth Amendment trial rights based on a silent record. See *Boykin v. Alabama*, 395 U.S. 238, 242-43, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969) (requiring record show defendant entered plea voluntarily); *State v. Browning*, 245 Kan. 26, 31-32, 774 P.2d 935 (1989); *State v. Anziana*, 17 Kan. App. 2d 570, 571, 840 P.2d 550 (1992)." *Laturner*, 38 Kan. App. 2d at 205-06.

*Melendez-Diaz* casts doubts on any portion of this reasoning that suggests a defendant cannot be required to assert the right of con-

frontation before trial—*i.e.*, any reasoning that casts doubt on those provisions that would be found in the simplest form of a notice-and-demand statute. 557 U.S. at 326. Further, although less clear, the *Melendez-Diaz* majority decision also casts doubt on the Court of Appeals' conclusion that a waiver of confrontation rights cannot occur by silence or inaction. The *Melendez-Diaz* majority recognized that many states "permit the defendant to assert (or forfeit by silence) his Confrontation Clause right after receiving notice of the prosecution's intent to use a forensic analyst's report." 557 U.S. at 326. Then, in a nod of approval, the majority cited a Colorado decision *Hinojos-Mendoza*. The apparent approval of *Hinojos-Mendoza* is significant because the Colorado Supreme Court rejected the argument that confrontation rights can only be waived if the defendant *personally* makes a voluntary, knowing, and intentional waiver on the record. Rather, the right of confrontation "falls into the class of rights that defense counsel can waive through strategic decisions, such as choosing whether and how to conduct cross-examination or by stipulating to the admission of evidence. [Citation omitted.]" *Hinojos-Mendoza*, 169 P.3d at 669; see *Magruder v. Commonwealth*, 275 Va. 283, 657 S.E.2d 113 (2008), *cert. granted sub nom. Briscoe v. Virginia*, 557 U.S. 933 (2009) (hereinafter *Briscoe*).

The conclusion that a defendant does not have to personally assert the waiver is consistent with the Supreme Court's statement in *Taylor v. Illinois*, 484 U.S. 400, 418, 98 L. Ed. 2d 798, 108 S. Ct. 646 (1988), that "[p]utting to one side the exceptional cases in which counsel is ineffective, the client must accept the consequences of the lawyer's decision to forgo cross-examination." See also 3 LaFave, Israel, King & Kerr, Criminal Procedure § 11.6(a), pp. 779-80 (3d ed. 2007) ("[T]he Supreme Court has indicated, in dictum or holding, that counsel has the ultimate authority in . . . foregoing cross-examination.").

Similarly, this court has repeatedly recognized that the decisions of whether and how to conduct cross-examination are strategic and tactical and are the exclusive province of the lawyer after consultation with his or her client. *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007); see *State v. Gonzales*, 289 Kan. 351, Syl. ¶ 4, 212

P.3d 215 (2009). Consequently, we reject the Court of Appeals' conclusion that K.S.A. 22-3437(3) is unconstitutional because it does not require an explicit waiver by the defendant of the right to cross-examine the laboratory analyst. More generally, the provisions of K.S.A. 22-3437(3) that mirror the simplest form of a notice-and-demand statute are constitutional.

### D. Beyond Notice and Demand

Still, the *Melendez-Diaz* majority's approval of notice-and-demand statutes in their "simplest form" does not mean K.S.A. 22-3437 is constitutional because the statute is not the "simplest form" of a notice-and-demand statute. Rather, it requires that the objection to the use of the certificate must be sufficient to convince the court that the conclusions in the certificate will be contested at the trial or hearing. K.S.A. 22-3437(1).

The majority in *Melendez-Diaz* did not directly address such a provision; rather it explicitly reserved judgment, stating:

"[S]*ome* state statutes, 'requir[e] defense counsel to subpoena the analyst, to show good cause for demanding the analyst's presence, or even to affirm under oath an intent to cross-examine the analyst.' We have no occasion today to pass on the constitutionality of every variety of statute commonly given the notice-and-demand label. It suffices to say that what we have referred to as the 'simplest form [of] notice-and-demand statutes,' *supra*, at 326, is constitutional." *Melendez-Diaz*, 174 L. Ed. 2d at 327 n.12.

In contrast, the four dissenting members of the Court stated:

"As further reassurance that the 'sky will not fall after today's decision,' *ante*, at 325, the Court notes that many States have enacted burden-shifting statutes that require the defendant to assert his Confrontation Clause right prior to trial or else 'forfeit' it 'by silence.' *Ibid.* The Court implies that by shifting the burden to the defendant to take affirmative steps to produce the analyst, these statutes reduce the burden on the prosecution.

"The Court holds that these burden-shifting statutes are valid because, in the Court's view, they 'shift no burden whatever.' *Ante*, at 327. While this conclusion is welcome, the premise appears flawed. Even what the Court calls the 'simplest form' of burden-shifting statutes *ante*, at 326, do impose requirements on the defendant, who must make a formal demand, with proper service, well before trial. Some statutes'impose more requirements, for instance by requiring defense counsel to subpoena the analyst, to show good cause for demanding the analyst's presence, or even to affirm under oath an intent to cross-examine the analyst. See generally Metzger, Cheating the Constitution, 59 Vand. L. Rev.

475, 481-485 (2006). In a future case, the Court may find that some of these more onerous burden-shifting statutes violate the Confrontation Clause because they 'impos[e] a burden . . . on the defendant to bring . . . adverse witnesses into court.' *Ante*, at 324." *Melendez-Diaz*, 557 U.S. at 354-55 (Kennedy, J., dissenting, joined by Roberts, C.J., Breyer, J., and Alito, J.).

Responding to these points, the majority rejected the dissent's view regarding the "simplest form" statute but did not reject the dissent's prediction that a statute would be unconstitutional if it required more than a pretrial demand for the presence of a witness. *Melendez-Diaz*, 557 U.S. at 326-27 & n.12. Nevertheless, the *Melendez-Diaz* decision does not answer that question, even in its dicta. The answer may come when the United States Supreme Court decides *Magruder*, 275 Va. 283, *cert. granted sub nom. Briscoe*, 557 U.S. 933, although that case may also be decided on the narrow issue of whether a defendant's power to subpoena a witness preserves confrontation rights; see Appellate Petition for Writ of Certiorari, 2008 WL 6485425 (May 29, 2008); but see *Melendez-Diaz*, 557 U.S. at 324 (answering this issue by noting that ability to subpoena witness "is no substitute for the right of confrontation" and condemning such statutes for shifting "consequences of adverse-witness no shows from the State to the accused").

Without knowing what the United States Supreme Court might say in a future case, for our current purposes *Briscoe* is worth some consideration because the Virginia court's decision is the most recent case addressing the same issues presented in this case. Hence, we suggested the parties address that decision in addition to *Melendez-Diaz* in their supplemental briefs.

As we consider these arguments, we will first focus on the parties' discussion of *Briscoe*, 275 Va. 283. In his supplemental brief, Laturner argues we can take little from the Virginia opinion because of the differences in the statutes. The Virginia statute allows a defendant to summon the witness and "examine him in the same manner as if he had been called as an adverse witness. Such witness shall be summoned and appear at the cost of the Commonwealth." Va. Code Ann. §19.2-187.1 (Michie 2008). In contrast, the Kansas

statute does not shift the burden to the defendant to produce the witness. Further, this court's decision in *State v. Fisher*, 222 Kan. 76, 563 P.2d 1012 (1977), much like the Supreme Court's majority opinion in *Melendez-Diaz*, 557 U.S. 324, made it clear that "for the declarant to be subject to full and effective cross-examination by the defendant, he must be called to testify by the state." *Fisher*, 222 Kan. at 82. Hence, we agree with Laturner that *Briscoe* has little impact on our analysis of the specifics of K.S.A. 22-3427(3) because of the differences in the Virginia and Kansas statutes.

Nevertheless, as the State notes, some of the rationale in the *Briscoe* decision applies under any notice-and-demand statute. For example, the decision discusses the appropriateness of a state imposing procedural rules governing the manner in which constitutional rights may or must be exercised and recognizes that the right of confrontation may be waived by counsel. See *Briscoe*, 275 Va. at 300-04. As previously discussed, there is support for these points in *Melendez-Diaz*.

The State also emphasized in its supplemental brief that the Virginia Supreme Court relied on the United States Supreme Court's holding that " 'the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.' *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)." *Briscoe*, 275 Va. at 299. In making this argument, the State does not acknowledge the *Melendez-Diaz* majority's discussion of the interests that are often cited to justify notice-and-demand statutes—*i.e.*, the burden on public resources—and the majority's rejection of those reasons as a basis for limiting the right to cross-examine the analysts. The majority stated:

"[R]espondent [the State] asks us to relax the requirements of the Confrontation Clause to accommodate the ' "necessities of trial and the adversary process." ' Brief for Respondent 59. It is not clear whence we would derive the authority to do so. The Confrontation Clause may make the prosecution of criminals more burdensome, but that is equally true of the right to trial by jury and the privilege against self-incrimination. The Confrontation Clause—like those other constitutional provisions—is binding, and we may not disregard it at our convenience." *Melendez-Diaz*, 557 U.S. at 325.

Hence, contrary to the State's argument (or at least the implication of that argument), accommodating the goal of relieving the burden on the resources of a laboratory and its analysts cannot serve as a basis for burdening a defendant's right to confront witnesses.

The State, however, makes other arguments. Primarily, the State argues that *Briscoe* supports and *Melendez-Diaz* does not prevent a determination that the objection provisions in K.S.A. 22-3437(3) are "entirely appropriate and constitutional" and are intended to assure "that defendants did not raise frivolous challenges whose only purpose is to burden the prosecution rather than actually test the evidence." The State notes that this conclusion is supported by this court's decision in *State v. Crow*, 266 Kan. 690, 706, 974 P.2d 100 (1999), in which this court found K.S.A. 22-3437 (then K.S.A. 1996 Supp. 22-3437) constitutional. (There have been only minor amendments in the statute after *Crow* was decided, and none would alter the reasoning in that decision.)

As the State observes, some additional rationales stated in the *Briscoe* decision were also relied on in *Crow*. We, therefore, examine whether these rationales remain valid after the decision in *Crawford* and refer to many portions of the *Melendez-Diaz* decision to assist in this analysis.

### E. Crow

The *Crow* court relied on several United States Supreme Court cases, including *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980), *overruled by Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), to conclude it was permissible to require a defendant to challenge the admissibility of laboratory reports and to show the necessity of the testimony of witnesses who prepared such reports. See *Crow*, 266 Kan. at 698-99, 705-06. The focus of the *Crow* opinion was on ensuring that the statutory requirements for the certificate were sufficient to ensure the reliability of its statements. In discussing this objective, the *Crow* court's analysis is replete with references to the key phrase of the *Roberts* test—indicia of reliability—and is largely based on the since-rejected theory that unconfronted testimony

was admissible as long as it bore indicia of reliability or particularized guarantees of trustworthiness. See *Crow*, 266 Kan. at 699, 704-05.

Once the *Crow* court concluded that the requirements of 22-3437 were sufficient to pass the *Roberts* indicia of reliability test, the court examined the notice-and-demand procedure and, in doing so, concluded the only grounds for an objection that will lead to live testimony of the analyst is one that reveals there is a real contest about the certificate's trustworthiness or reliability. *Crow*, 266 Kan. at 704-06. In reaching this conclusion the court relied on decisions from other courts, first discussing *State v. Sosa*, 59 Wash. App. 678, 800 P.2d 839 (1990), and then two New Jersey decisions.

Discussing *Sosa*, the *Crow* court stated:

> "[I]f we choose to uphold the constitutionality of this statute, we analyze it much as the Washington Court of Appeals did in *State v. Sosa*, 59 Wash. App. 678, 684-86, 800 P.2d 839 (1990), where it was held: (1) unavailability need not be shown because persons involved in routine activity are unlikely to recall the details of the transaction and cross-examination would serve little or no purpose; (2) the certified copy of the lab report is reliable evidence because skilled professionals, many with advanced degrees, perform the tests with no motive to falsify the report; (3) the statute parallels the firmly rooted business records exception; (4) the failure to subpoena the lab expert by the defendant was a waiver of a right under the rule and not the constitution, and (5) defense counsel's failure to demand the presence of the expert was not ineffective assistance of counsel . . . ." *Crow*, 266 Kan. at 700.

These reasons bear striking similarities to many of the arguments made in the *Melendez-Diaz* dissent, points which were countered (and rejected) by the majority.

For example, in arguments similar to the first reason listed by the *Crow* court, the *Melendez-Diaz* dissenters proffered a variety of reasons a laboratory analyst should not be considered a typical or "conventional witness." The reasons included: (1) The witness is not accusatory; (2) the report is nearly contemporaneous, (3) the analyst has not observed the crime or any human action related to it, and (4) the report and certificate are not made in response to interrogation. *Melendez-Diaz v. Massachusetts*, 557 U.S. at 330-63 (2009) (Kennedy, J., dissenting, joined by Roberts, C.J., Breyer, J., and Alito, J.).

The majority rejected each of these points and other assertions posed by the dissent, noting among other things that the arguments would exclude all expert witnesses from confrontation. *Melendez-Diaz*, 557 U.S. at 313-17. Further, the Court stated:

"The text of the [Sixth] Amendment contemplates two classes of witnesses—those against the defendant and those in his favor. The prosecution *must* produce the former; the defendant *may* call the latter. Contrary to respondent's assertion, there is not a third category of witnesses, helpful to the prosecution, but somehow immune from confrontation." *Melendez-Diaz*, 557 U.S. at 313-14.

In addition, the *Melendez-Diaz* Court responded to several of the dissenters' points which, like the second and third *Crow* rationales, were married to and dependent on the *Roberts* test regarding the reliability of the evidence. The majority in *Melendez-Diaz* summarized many of these points in the dissent as being ones suggesting that the certificate should be admissible because it is the " 'resul[t] of neutral, scientific testing' " . . . [or] because 'one would not reasonably expect a laboratory professional . . . to feel quite differently about the results of his scientific test by having to look at the defendant.' [Citations omitted.]" *Melendez-Diaz*, 557 U.S. at 317.

Rejecting these arguments, the Court observed:

"This argument is little more than an invitation to return to our overruled decision in *Roberts*, 448 U.S. 56, [100 S. Ct. 2531, 65 L. Ed. 2d 597,] which held that evidence with 'particularized guarantees of trustworthiness' was admissible notwithstanding the Confrontation Clause. *Id.*, at 66. What we said in *Crawford* in response to that argument remains true:

" 'To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. . . .

'Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes.' . . . .

. . . .

"Nor is it evident that what respondent calls 'neutral scientific testing' is as neutral or as reliable as respondent suggests. Forensic evidence is not uniquely immune from the risk of manipulation." *Melendez-Diaz*, 557 U.S. at 317-18.

In addition, the Court rejected a business record justification, stating:

"[T]he affidavits do not qualify as traditional official or business records, and even if they did, their authors would be subject to confrontation nonetheless.

"Documents kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status. See Fed. Rule Evid. 803(6). But that is not the case if the regularly conducted business activity is the production of evidence for use at trial. Our decision in *Palmer v. Hoffman*, 318 U.S. 109[, 63 S. Ct. 477, 87 L. Ed. 645] (1943), made that distinction clear. There we held that an accident report provided by an employee of a railroad company did not qualify as a business record because, although kept in the regular course of the railroad's operations, it was 'calculated for use essentially in the court, not in the business.' [Citation omitted.]" *Melendez-Diaz*, 557 U.S. at 321.

The Court further explained why drawing a parallel to the business records exception did not provide a grounds for determining the Confrontation Clause did not apply, stating:

"As we stated in *Crawford*: 'Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy.' 541 U.S., at 56. Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial. Whether or not they qualify as business or official records, the analysts' statements here—prepared specifically for use at petitioner's trial—were testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment." *Melendez-Diaz*, 557 U.S. at 324.

These conclusions by the Court are contrary to the first three rationales of the *Crow* decision.

The fourth and fifth reasons stated by the *Crow* court—that the defendant's failure to subpoena the laboratory analyst was a waiver of a right under the rule and not the Constitution and that defense counsel should assert the right by subpoenaing the witness if a waiver is not intended—are also disputed by the *Melendez-Diaz* majority, which stated:

"Respondent [the State] asserts that we should find no Confrontation Clause violation in this case because petitioner had the ability to subpoena the analysts. But that power—whether pursuant to state law or the Compulsory Process Clause—is no substitute for the right of confrontation. Unlike the Confrontation Clause, those provisions are of no use to the defendant when the witness is unavailable or simply refuses to appear. [Citation omitted.] Converting the prosecution's duty under the Confrontation Clause into the defendant's privilege under

state law or the Compulsory Process Clause shifts the consequences of adverse-witness no-shows from the State to the accused. More fundamentally, the Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court. Its value to the defendant is not replaced by a system in which the prosecution presents its evidence via *ex parte* affidavits and waits for the defendant to subpoena the affiants if he chooses." *Melendez-Diaz*, 557 U.S. at 324-25.

Hence, the *Crow* court's rationales that derived from the Wisconsin decision are not valid in light of *Crawford* and *Melendez-Diaz*.

As additional support for its holding, the *Crow* court cited New Jersey decisions—specifically *State v. Matulewicz*, 101 N.J. 27, 30, 499 A.2d 1363 (1985), and *State in Interest of J.H.*, 244 N.J. Super. 207, 217, 581 A.2d 1347 (1990). In *Matulewicz*, the New Jersey court imposed requirements to assure that the conclusions in a laboratory analyst's certificate are reliable. 101 N.J. at 30. Then, in *State in Interest of J.H.*, the New Jersey court concluded the statutory procedure "may be construed to establish a procedural framework under which the State may ascertain before trial whether a defendant will object to the admission of a laboratory certificate and, if so, whether the certificate satisfies the tests of reliability set forth in *Matulewicz*." *State in Interest of J.H.*, 244 N.J. Super. at 218.

Relying on this authority, the *Crow* court concluded that 22-3437 imposed particularized guarantees of trustworthiness and assured the reliability of the certificate's contents by specifying the required contents of the certificate, including many matters that would establish that the analysis complied with professional standards. See K.S.A. 22-3437(2); *Crow*, 266 Kan. at 704-06. The *Crow* court extended this analysis beyond the holding of the New Jersey court by addressing the standard to be applied in judging whether a certificate was to be admitted even if the defendant had stated some form of objection. Noting that 22-3437 required the trial court to determine whether the objection was sufficient, the *Crow* court reasoned that to have a right to confront the witness the defendant would have to establish that the trustworthiness and reliability of the certificate was in issue because, if it was trustwor-

thy and reliable, there was no confrontation right under *Roberts*. Specifically, the court required that "the grounds of the objection have an indicia of merit, not be interposed for delay, and result in a valid issue being contested at trial"; in discussing this test, the court explained that an objection with "an indicia of merit" was one which attacked the reliability of the hearsay. *Crow*, 266 Kan. at 706.

This reasoning, grounded on the *Roberts* test, was undercut by *Crawford*, 541 U.S. 36. As explained in *Melendez-Diaz*, it does not matter how reliable the evidence may be; a defendant still has a right to cross-examine the witness. 557 U.S. at 317. In addition, even before *Crawford* was decided, the New Jersey Supreme Court in *State v. Miller*, 170 N.J. 417, 435, 790 A.2d 144 (2002), rejected *Crow*'s holding, which it categorized as a minority position, when it addressed the question it had not reached in either *Matulewicz* or *State in Interest of J.H.*—whether a *specific* objection could be demanded of a defendant before the State is required to produce a witness. *Miller*, 170 N.J. at 435.

In *Miller*, the New Jersey Supreme Court focused on the sentence in that state's statute providing that " 'a proffered certificate shall be admitted unless it appears from the notice of objection and *specific* grounds for that objection that the composition, quality, or quantity of the substance submitted to the laboratory analysis will be contested at trial.' N.J. [Stat. Ann. §] 2C:35-19c." (Emphasis added.) *Miller*, 170 N.J. at 432. This portion of the New Jersey statute is strikingly similar to one sentence in K.S.A. 22-3437(3), which states: "A proffered certificate shall be admitted in evidence unless it appears from the notice of objection and grounds for that objection that the conclusions of the certificate, including the composition, quality or quantity of the substance submitted to the laboratory for analysis or the alcohol content of a blood or breath sample will be contested at trial." There are differences between the two statutes, however, one of which is the New Jersey statute's requirement quoted above that the objection include "specific grounds." Nevertheless, this statutory difference was erased by the holding in *Crow*, which imposed a requirement "that the grounds of the objection have an indicia of merit, not be interposed for

delay, and result in a valid issue being contested at trial." *Crow*, 266 Kan. at 706. In effect, this judicially imposed requirement made a defendant state a specific objection.

In concluding such a requirement was unconstitutional, the New Jersey court stated that a defendant "cannot, as a matter of constitutional imperative, be assigned any burden to detail an objection to the admission of [a forensic] lab certificate." *Miller*, 170 N.J. at 436. Observing that the State has the burden to prove guilt beyond a reasonable doubt, the *Miller* court stated a defendant should not be required "to vault a legal hurdle" in order to exercise his or her right to confront State witnesses. *Miller*, 170 N.J. at 434. Citing similar decisions from other states, the New Jersey court noted:

" 'When a defendant attempts to surmount the barrier, he finds himself in the untenable position of having to identify "specific grounds" in order to confront the analyst, but being unable to confront the analyst in order to identify the "specific grounds." Requiring a defendant to request the presence of the witnesses against him and to explain why he requires their presence in order to be afforded his constitutional right of confrontation places too heavy a burden on the assertion of a constitutional protection.' *Miller v. State*, 266 Ga. 850, 472 S.E.2d 74, 79-80 (1996)." *Miller*, 170 N.J. at 435.

See *State v. Christensen*, 135 N.H. 583, 586, 607 A.2d 952 (1992); *State v. Kent*, 391 N.J. Super. 352, 381-82, 918 A.2d 626 (2007).

This reasoning is sound. The purpose of cross-examination, in part, is to explore weaknesses in the reliability of a witness' testimony and, when that witness is a laboratory analyst, in the results of forensic tests. See *Melendez-Diaz*, 557 U.S. at 318-20. Demanding that a defendant determine the nature of an objection to the reliability of the tests before questioning the witness imposes a difficult burden. Yet, this burden would have to be met to satisfy the *Crow* requirement that the objection have an indicia of merit, and merely stating an intent to attack reliability of the report would fall short. Moreover, the justification for imposing the requirement that there be an indicia of merit—*i.e.*, the belief that a confrontation right only arose if the hearsay evidence did not have particularized guarantees of trustworthiness—is no longer valid in light of

*Crawford.* We, therefore, abrogate and overrule the holding in *Crow* and conclude that decision imposes an improper hurdle on the assertion of a defendant's rights under the Confrontation Clause as interpreted in *Crawford* and subsequent decisions.

There remains the question of whether, in light of our abrogating and overruling of *Crow*, K.S.A. 22-3437 itself is unconstitutional. The New Jersey court in *Miller* determined it was the word " 'specific' " that caused its statute to violate the Confrontation Clause. The court excised that word and left the language that is similar to our statute—*i.e.,* that an objection state grounds contesting the composition, quality, or quantity of the substance tested. The New Jersey court viewed this language as merely imposing a procedural requirement that did not create a barrier to the assertion of the right to confront the witness. Nevertheless, the court stated:

"We agree with the majority view expressed in legislation and case law that a defendant cannot, as a matter of constitutional imperative, be assigned any burden to detail an objection to the admission of an lab certificate. However, unlike some other jurisdictions, we see no reason to invalidate the entire notice and demand procedure. Rather, to avoid constitutional infirmity, we interpret N.J.S.A. 2C:35-19c to require only that a defendant object to the lab certificate and assert that the composition, quality, or quantity of the tested substance will be contested at trial." *Miller,* 170 N.J. at 436.

While we could provide similar direction, the Kansas statute would still have provisions requiring the court to rule on the objection. This potentially leads to a pitfall that is made apparent by the circumstances of this case where Laturner's objection was not directed at contesting the composition, quality, or quantity of the substance tested but at learning information left out of the certificate and accompanying report—*i.e.,* which three of the four bags tested positive for methamphetamine. This detail could be critical in defending a constructive possession case. Yet, if a defendant raised the same objection as raised by Laturner, a district judge considering the objection would be faced with the sentence in K.S.A. 22-3437(3) stating that the certificate "shall" be admitted unless it is established that the test results will be challenged. The objection would not satisfy this test, the district judge could deny

the motion, and the defendant would be deprived of the right to confront the witness and the ability to clarify an ambiguity that might be crucial to the defense.

As this illustrates, it is combination of the two sentences—one requiring the district judge to rule on the objection and the other stating that the certificate shall be admitted unless it meets the narrowly defined, permissible objection—that imposes too heavy a burden on a defendant's rights and causes us to conclude K.S.A. 22-3437(3) is unconstitutional when applied in a criminal case.

## 3. Severance

Although the Court of Appeals relied on different grounds and reasoning, it reached the same conclusion and severed the following language from Kansas' notice-and-demand statute when applied in criminal cases:

> " 'An opposing party who intends to object to the admission into evidence of a certificate shall give notice of objection and the ground for the objection within 10 days upon receiving the adversary's notice of intent to proffer the certificate. Whenever a notice of objection is filed, admissibility of the certificate shall be determined no later than two days before the beginning of the trial. A proffered certificate shall be admitted in evidence unless it appears from the notice of objection and grounds for that objection that the conclusions of the certificate, including the composition, quality or quantity of the substance submitted to the laboratory for analysis or the alcohol content of a blood or breath sample will be contested at trial. A failure to comply with the time limitations regarding the notice of objection required by this section shall constitute a waiver of any objections to the admission of the certificate.' " *Laturner*, 38 Kan. App. 2d 193, Syl. ¶¶ 7, 9; K.S.A. 22-3437(3).

Such a drastic step is not necessary in light of the statements in *Melendez-Diaz* that a notice-and-demand statute in its simplest form would be constitutional. We reach this conclusion, in large part, because K.S.A. 22-3438 provides that portions of this statutory Act are severable:

> "If any provision of this act or the application thereof to any person or circumstances is held invalid, the invalidity does not affect other provisions or applications of this act which can be given effect without the invalid provision or application. To this end the provisions of this act are severable."

This provision evidences a legislative intent that offending language should be severed rather than have the entire provision nullified as done by the Court of Appeals, as long as the remaining language leaves a workable procedure. See *State v. Limon,* 280 Kan. 275, 304-05, 122 P.3d 22 (2005); *State v. Denney,* 278 Kan. 643, 659-60, 101 P.3d 1257 (2004).

What then is the offending language? As previously discussed, it is the third and fourth sentences of K.S.A. 22-3437(3), which state: "Whenever a notice of objection is filed, admissibility of the certificate shall be determined no later than two days before the beginning of the trial. A proffered certificate shall be admitted in evidence unless it appears from the notice of objection and grounds for that objection that the conclusions of the certificate, including the composition, quality or quantity of the substance submitted to the laboratory for analysis or the alcohol content of a blood or breath sample will be contested at trial." Consequently, we sever these sentences from K.S.A. 22-3437(3) when that statute is applied in cases where Sixth Amendment rights have arisen.

Finally, we must consider whether requiring a defendant to state the grounds for an objection is unconstitutional. This consideration is influenced by our decision to sever the language specifying the substance of an objection. With that requirement severed, a defendant need only object on the basis of the Confrontation Clause, and, as the *Melendez-Diaz* majority stated, "[t]he defendant *always* has the burden of raising his Confrontation Clause objection." 557 U.S. at 327. This rule is consistent with the general rule that "a timely and specific objection for the admission of evidence is necessary to preserve the issue for appeal. See K.S.A. 60-404. Thus, even if constitutional grounds for inadmissibility are asserted, the issue is not properly before this court for review if raised for the first time on appeal." *State v. Johnson,* 286 Kan. 824, 839, 190 P.3d 207 (2008).

In summary, in any case where the right of confrontation arises under the Sixth Amendment to the United States Constitution, we sever the third and fourth sentences of K.S.A. 22-3437(3) leaving that subsection to read:

"Whenever a party intends to proffer in a criminal or civil proceeding, a certificate executed pursuant to this section, notice of an intent to proffer that certificate and the reports relating to the analysis in question, including a copy of the certificate, shall be conveyed to the opposing party or parties at least 20 days before the beginning of a hearing where the proffer will be used. An opposing party who intends to object to the admission into evidence of a certificate shall give notice of objection and the ground for the objection within 10 days upon receiving the adversary's notice of intent to proffer the certificate. [Third and fourth sentences are severed and deleted.] A failure to comply with the time limitations regarding the notice of objection required by this section shall constitute a waiver of any objections to the admission of the certificate. The time limitations set forth in this section may be extended upon a showing of good cause."

However, in this case, these offending provisions were enforced, with the result that the district court concluded Laturner's objection was not adequate to require the live testimony of the KBI analyst. Consequently, Laturner's right to confront the analyst, which he had timely asserted, was unconstitutionally burdened and, as a result, evidence was impermissibly admitted. This evidence related to an element of the charge of possession of methamphetamine, establishing that the substance seized during Laturner's arrest was methamphetamine. In addition, this evidence may have influenced the jury's determination that Laturner possessed drug paraphernalia. Therefore, we cannot say that the error was harmless. Laturner's convictions must be reversed. See *State v. Atkinson*, 276 Kan. 920, 925, 80 P.3d 1143 (2003) (constitutional error harmless if appellate court "willing to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial").

The Court of Appeals decision reversing the district court is affirmed in part and reversed in part. Judgment of the district court is reversed, and the case is remanded with directions to the district court for a new trial.