NOT DESIGNATED FOR PUBLICATION

No. 115,924

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHAWN J. COX,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; DAVID A. RICKE, judge. Opinion filed July 14, 2017. Affirmed.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Cheryl M. Pierce*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MCANANY and ATCHESON, JJ.

*Per Curiam*: Shawn Cox argues that the district court erred in granting the State's motion to correct an illegal sentence. He also argues that his lifetime postrelease sentence is illegal and constitutes cruel or unusual punishment. We are unpersuaded by these arguments because Cox's sentence falls under K.S.A. 2016 Supp. 22-3717(d)(1)(G), which requires lifetime postrelease supervision, thus rendering his original sentencing illegal, and our Supreme Court has determined that the imposition of lifetime postrelease supervision in a case such as this does not constitute cruel or unusual punishment.

*Facts*

Cox, age 19, met a 14-year-old girl at a playground in El Dorado. He later had sexual intercourse with her. He told the police that she was the one who should be getting into trouble because she pursued him and their sexual intercourse was consensual.

Cox was charged with aggravated indecent liberties. He pled guilty to the charge. At his sentencing hearing, he moved for a dispositional and durational departure. The district court denied Cox's departure motion and sentenced him to 79 months in prison followed by 36 months of postrelease supervision.

Several years later, the State moved to correct an illegal sentence based on the contention that K.S.A. 2016 Supp. 22-3717(d)(1)(G) required that Cox be ordered to serve lifetime postrelease supervision. The court granted the State's motion, and Cox appealed.

*Motion to Correct Illegal Sentence*

On appeal, Cox argues that K.S.A. 2016 Supp. 22-3717(d)(1)(G) and K.S.A. 2016 Supp. 22-3717(d)(1)(D) are in direct conflict, so the district court should have applied the rule of lenity, making him subject to the lesser of the two of the prescribed penalties: 36 months rather than lifetime postrelease supervision. He further argues K.S.A. 22-3717(d)(1)(D), which was amended in 2013, is retroactive and applies to his case.

Interpreting a sentencing statute is an issue of law over which we have unlimited review. *State v. Nguyen*, 304 Kan. 420, 422, 372 P.3d 1142 (2016); *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). Likewise, we have unlimited review over whether a sentence is illegal. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). If a

2

court finds a sentence to be illegal, it can correct it at any time. *State v. Lewis*, 299 Kan. 828, 858, 326 P.3d 387 (2014). An illegal sentence is:

"(1) a sentence imposed by a court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in character or the term of authorized punishment; or (3) a sentence that is ambiguous with respect to the time and manner in which it is to be served." *State v. Taylor*, 299 Kan. 5, 8, 319 P.3d 1256 (2014).

The claimed statutory conflict Cox relies on was recently addressed in *State v. Herrmann*, 53 Kan. App. 2d 147, 384 P.3d 1019 (2016). We adhere to the analysis and conclusion in *Herrmann* that K.S.A. 2016 Supp. 22-3717(d)(1)(D) and K.S.A. 2016 Supp. 22-3717(d)(1)(G) are not in direct conflict. No persons convicted of a sexually violent crime would be subject to the provisions of both subsections (D) and (G) of the statute.

"Subsection (d)(1) explains that persons sentenced for crimes committed after July 1, 1993, will not be eligible for parole; instead they will be subject to mandatory postrelease supervision as provided in the subparagraphs that follow. Notably, however, this subsection (d)(1) expressly states that the mandatory postrelease supervision provided in the subparagraphs that follow *do not apply* to 'persons subject to subparagraph (G).' Subparagraph (G) provides that 'persons convicted of a sexually violent crime committed on or after July 1, 2006, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life.'" 53 Kan. App. 2d at 152.

Based on his post-2006 crime of aggravated indecent liberties, Cox was required to be sentenced to lifetime postrelease supervision under subparagraph (G) of the statute. Thus, his 36-month term of postrelease supervision was illegal and the district court did not err in resentencing him to lifetime postrelease supervision under subsection (G) of the statute.

3

Finally, with respect to the claim of retroactive application of K.S.A. 22-3717(d)(1)(D) as amended in 2013, this statute does not apply to Cox, so the fact that it was amended is immaterial. There is no need to determine whether the amended statute, which has no application here, should be applied retroactively.

*Constitutionality of Lifetime Postrelease Supervision*

For his remaining claim of error, Cox claims the district court erred in finding that lifetime postrelease supervision was not cruel or unusual punishment. In our review, we presume that the statute requiring lifetime postrelease supervision is constitutional. See *State v. Mossman*, 294 Kan. 901, 906, 281 P.3d 153 (2012). If there is any reasonable way to construe the statute as constitutional, we are duty bound to do so by resolving all doubts in favor of its constitutionality. *State v. Laturner*, 289 Kan. 727, 735, 218 P.3d 23 (2009).

In *State v. Freeman*, 223 Kan. 362, 367, 574 P.3d 950 (1978), our Supreme Court identified the following three factors for determining whether the length of a sentence offends the constitutional prohibition against cruel or unusual punishment:

> "(1) [t]he nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment; (2) [a] comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and (3) [a] comparison of the penalty with punishments in other jurisdictions for the same offense."

With respect to the first *Freeman* factor, which is fact-specific to a particular case, Cox argues that his "youth, and his relatively minor criminal history, make his lifetime postrelease sentence cruel and/or unusual punishment."

The district court made both factual findings and legal conclusions with respect to this factor. Regarding the district court's findings of fact, Cox concedes, "Generally speaking, the court's factual findings align with the evidence upon which it relied." But he takes exception to the court's finding that he has a history of sexual irresponsibility. But Cox's criticism is, in reality, to the conclusion that he is sexually irresponsible, rather than to the underlying facts upon which that conclusion is based. With respect to this and the other conclusions the district court has drawn from the evidence, our review is de novo. See *State v. Gant*, 288 Kan. 76, 80, 201 P.3d 673 (2009); *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007).

The analysis under the first *Freeman* factor requires the court to consider the nature of the offense and the character of the offender. *State v. Ross*, 295 Kan. 424, 426, 284 P.3d 309 (2012). These are by their nature "inherently factual, requiring examination of the facts of the crime and the particular characteristics of the defendant." *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 (2008).

With respect to the court's conclusion that Cox was sexually irresponsible, Cox argues that this was based on the fact that at age 19 he already had two children born out of wedlock by two different mothers. He argues that the court injected "a personal opinion of Mr. Cox's *lawful* procreation when considering the permissibility of a sentence for an *unlawful* sex act."

Without considering the merits of this claim, and based on the outcome of the proceedings in *State v. Funk*, 301 Kan. 925, 349 P.3d 1230 (2015), we are satisfied that

5

even without this characterization of Cox's sexual history, the outcome of the proceedings would not have changed.

In *Funk*, the defendant was convicted of attempted indecent solicitation of a child, a level 8 person felony. The crime involved attempting to persuade a child 14 or more years of age but less than 16 years of age to commit or submit to an unlawful sexual act. The facts, unchallenged on appeal, established that the child was age 14 at the time of the crime, but she apparently represented to Funk that she was 16 years old. Funk was age 18 or 19 at the time of the crime. Funk had one prior felony conviction for burglary and two convictions of misdemeanor theft and was on probation at the time he committed his current crime. The district court determined that the crime occurred at a party where the various participants, including the child, were drinking. The child had sexual intercourse with two other men in Funk's presence and performed oral sex on him. The group then left for another party where other inappropriate sexual conduct took place. For this crime Funk was granted 18 months' probation with an underlying prison sentence of 10 months plus lifetime postrelease supervision. On appeal, the Supreme Court majority determined that "the first *Freeman* factor does not heavily favor Funk as he claims." 301 Kan. at 940. The court determined that the district court's imposition of lifetime postrelease supervision did not constitute cruel or unusual punishment. 301 Kan. at 943.

Cox argues on appeal that the court did not give appropriate weight to "Mr. Cox's youth, and his relatively minor criminal history." But both Funk and Cox had prior felony convictions for burglary and theft. Funk was on probation at the time of his sex crime; Cox had been released from the juvenile correctional facility a few months before his sex crime. Both Funk and Cox were about age 19 at the time of their crimes. Both were charged with level 3 felonies.

6

Cox also argues that he is not a serial sex offender, and his "adjudications hardly demonstrate that he is locked into a lifetime of criminal behavior." Of course, both Funk and Cox have a history of the same crimes.

The victims of Funk and Cox were age 14. Both Funk and Cox claimed the sexual encounter was voluntary. Both claimed the child was the initiator. There apparently was no evidence of consequential harm to the child after Funk's crime. There was evidence in Cox's case of harm to the child from post-traumatic stress, social pressure, and bullying. The court characterized the impact of Cox's crime on the child as "devastating."

Even without a finding that Cox had a history of being sexually irresponsible, there was ample evidence to support a finding consistent with the first *Freeman* factor regarding the nature of the offense and the character of the offender. Because Cox has no further criticism of the district court's findings, we need not address the other findings by the district court.

With that, we can move to the categorical challenges found in the remaining two *Freeman* factors.

For the second *Freeman* factor, the district court correctly noted the offense has been analyzed by the Kansas Supreme Court, which determined that "a defendant's post-release freedom being constrained for a longer period of time than if he committed second-degree murder is NOT grossly disproportionate, and therefore is not so significant that it would outweigh the first *Freeman* factor."

With respect to the third *Freeman* factor, the district court noted that in *Mossman* and *State v. Cameron*, 294 Kan. 884, 893-895, 281 P.3d 143 (2012), our Supreme Court analyzed this factor and found, after comparing Kansas law to other jurisdictions, that

K.S.A. 2016 Supp. 22-3717(d)(1)(G) is not cruel or unusual punishment. In *Mossman*, the court determined under the third *Freeman* factor that

> "[u]nder the facts of this case, a defendant's sentence of lifetime postrelease supervision under K.S.A. 22-3717(d)(1)(G) for the crime of aggravated indecent liberties with a child is not cruel or unusual punishment under § 9 of the Kansas Constitution Bill of Rights; in other words, it is not do disproportionate to the crime that it shocks the conscience and offends fundamental notions of human dignity. Factors leading to this conclusion include: the nature of the offense, which is serious and is a sex crime against a minor that historically has been treated as a forcible or violent felony regardless of whether there is physical force; the defendant's characteristics; and the penological goals of postrelease supervision, which include retribution, deterrence, incapacitation, and rehabilitation. These factors outweigh the lack of strict proportionality with other sentences in Kansas and other jurisdictions, especially given that the sentence is not grossly proportionate." *Mossman*, 294 Kan. 901, Syl. ¶ 5.

The *Cameron* court agreed and found for those same reasons the defendant's sentence did not violate § 9 of the Kansas Constitution. 294 Kan. at 895.

*Mossman* and *Cameron* are decisions by our Supreme Court. The second and third *Freeman* factors discussed in *Mossman* and *Cameron* are categorical factors that are not driven by the unique facts of a particular case beyond the nature of the crime for which the defendant was convicted. *Mossman* and *Cameron* control the analysis of the second and third *Freeman* factors. We are bound to follow them unless we have some indication that our Supreme Court has or is about to depart from them. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). We have no such indication. Under the second and third *Freeman* factors, lifetime postrelease supervision for this crime is not unconstitutional. The district court did not err in imposing lifetime postrelease supervision.

Affirmed.