(219 P.3d 1223)
No. 100,178

STATE OF KANSAS, *Appellee,* v. ANTHONY R. MURPHY, *Appellant.*
Petition for review granted September 7, 2010.

Opinion filed November 13, 2009.

*Shawn E. Minihan,* of Kansas Appellate Defender Office, for appellant.

*Tony Cruz,* assistant county attorney, and *Steve Six,* attorney general, for appellee.

Before RULON, C.J., GREENE, J., and LARSON, S.J.

RULON, C.J.: The defendant, Anthony Murphy, was convicted of possession of cocaine with the intent to sell and possession of cocaine with no tax stamp. On appeal the defendant challenges his convictions.

## Issues on Appeal

The defendant raises the following issues:

I. The district court erred in denying defendant's motion to suppress because the consent to search was extracted during an unlawful detention, not a voluntary encounter.

II. K.S.A. 22-3437, as interpreted by the Kansas Supreme Court in *State v. Laturner,* 289 Kan. 727, Syl. ¶¶ 1-3, 218 P.3d 23 (2009), is unconstitutional in part pursuant to *Crawford v. Washington,* 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004).

## Underlying Facts

The facts are essentially undisputed and are as follows:

The defendant was traveling westbound on I-70 in Geary County when he was pulled over by Officer Maschmeier. Maschmeier confronted the defendant, explaining the defendant was pulled over because he was driving 79 mph in a 70 mph zone. Maschmeier obtained the defendant's license and insurance, returned to his vehicle, and wrote the defendant a warning ticket. Maschmeier exited his vehicle, walked over to the rear of the defendant's vehicle, and motioned for the defendant to meet him.

Maschmeier gave the defendant the warning ticket and told the defendant he was free to leave. The defendant shook Maschmeier's hand and turned to walk back to his vehicle, when Maschmeier asked if he had any illegal contraband, alcohol, drugs, or weapons in the vehicle. The defendant denied possessing any weapons or illegal contraband.

Maschmeier then asked the defendant if he would mind if Maschmeier searched the defendant's vehicle. The defendant consented to the search. Maschmeier asked if he could pat-down the defendant, and the defendant consented to a *Terry* pat-down. See *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1686 (1968); K.S.A. 22-2402(2). Maschmeier searched the defendant's vehicle and found drugs and drug paraphernalia.

The defendant was convicted of the charged offenses.

## The Search

On appeal, the defendant first argues the district court erred in denying the defendant's motion to suppress the evidence seized from the defendant's vehicle because the defendant's traffic stop detention never evolved into a consensual encounter.

The State contends under the totality of the circumstances, the interaction between Maschmeier and the defendant became a consensual encounter before the search occurred and the evidence from the search was properly admitted.

The appellate courts review a district court's decision on a motion to suppress using a bifurcated standard. "Without reweighing the evidence, the appellate court reviews the district court's findings to determine whether they are supported by substantial competent evidence. The appellate court then reviews the ultimate legal conclusion regarding the suppression of evidence using a de novo standard." *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007).

When an officer effects a traffic stop, the officer must " ' "have a reasonable and articulable suspicion, based on fact, that the person stopped has committed, is committing, or is about to commit a crime." ' [Citations omitted.]" *State v. Thompson*, 284 Kan. 763, 773, 166 P.3d 1015 (2007); see K.S.A. 22-2402(1). The scope and

duration of the traffic stop is then limited to that which is necessary to carry out the purpose of the traffic stop, including the request for documentation from the driver, the computer check of the driver's information, and the issuance of a citation. If the officer obtains no information raising a reasonable and articulable suspicion of illegal activity during the time required to complete these tasks, then the motorist must be allowed to leave without further delay. See *Thompson*, 284 Kan. at 774-75.

However, the encounter may also be continued if it ceases to be a detention and becomes consensual, with the driver voluntarily consenting to additional questioning. 284 Kan. at 775.

Here, the defendant does not challenge the propriety of the original traffic stop. Neither does the defendant deny he ultimately gave Maschmeier permission to search the vehicle. The defendant asserts only that Maschmeier improperly continued the encounter after completing the traffic stop, ultimately leading to the search of the defendant's vehicle, which revealed the seized evidence underlying defendant's arrest and eventual conviction.

The State, however, argues the encounter became consensual after Maschmeier informed the defendant he was free to go. The State contends the defendant voluntarily continued the encounter by answering the deputy's further questions and consenting to the search.

A totality of the circumstances test is applied to determine if there is an impermissible seizure or a consensual encounter. Under this test, "law enforcement interaction with a person is consensual [and] not a seizure if, under the totality of the circumstances, the law enforcement officer's conduct conveys to a reasonable person that he or she was free to refuse the requests or otherwise end the encounter." *Thompson*, 284 Kan. at 775.

In reviewing a district court's determination under the totality of the circumstances test, an appellate court reviews the factual underpinnings under a substantial competent evidence standard and reviews the ultimate legal conclusion drawn from these facts, *i.e.*, whether a reasonable person would feel free to refuse any requests or to otherwise terminate the encounter, under a de novo standard. 284 Kan. at 776.

The parties agree *Thompson* is the key Kansas case to be applied here. In *Thompson*, an officer pulled over the defendant for a faulty headlight. After completing the usual traffic stop tasks and returning the defendant's documentation with a verbal warning, the officer told the defendant to have a nice day and began to walk away. The officer then returned within a second or two and asked, "By the way, can I ask you a few questions?" The defendant agreed and eventually consented to a search of his vehicle that revealed drug paraphernalia and a baggie containing powder residue. The defendant was ultimately convicted of seven drug-related counts. The question presented by the defendant in a motion to suppress before the district court and then on appeal was whether the defendant's encounter with the officer was consensual at the time he consented to the search. In answering this question, our Supreme Court set forth an extensive survey of the case law regarding seizures versus voluntary encounters in the context of a traffic stop. See 284 Kan. at 772-812.

Our Supreme Court concluded, under the totality of the circumstances in *Thompson*, a reasonable person would have felt free to refuse the officer's request or otherwise end the encounter. In doing so, the *Thompson* court set forth a number of factors that, while not exhaustive or exclusive, do tend to occur frequently and indicate an encounter was consensual. The *Thompson* factors include: "knowledge of the right to refuse, a clear communication that the driver is free to terminate the encounter or refuse to answer questions, return of the driver's license and other documents, and a physical disengagement before further questioning." 284 Kan. at 810-11.

The *Thompson* court additionally set forth common factors indicating a coercive environment, including:

"the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, the use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory, the prolonged retention of a person's personal effects such as identification, a request to accompany the officer somewhere, interaction in a nonpublic place, absence of other members of the public, or the display of emergency lights." 284 Kan. at 811.

The *Thompson* court emphasized because the factors require consideration of the totality of the circumstances, no one factor can be legally dispositive, although it may weigh differently in different cases. Similarly, there is no bright-line rule which will always establish, or that is required to establish, that an encounter has become voluntary. Rejected bright-line rules include the return of the driver's documents, physical disengagement by the officer, or the officer's statement to a driver that the driver "is free to go." However, these can be factors to be considered in the totality of the circumstances. See 284 Kan. at 799-804.

Here, in denying the motion to suppress, the district court first found Maschmeier's testimony was more credible than the testimony of the defendant. The district court then found that prior to Maschmeier's questioning and seeking of consent to search, Maschmeier told the defendant he was free to go and a reasonable person would have felt free to leave. The district court found the defendant was headed back to his vehicle before the officer asked further questions. The district court found the encounter became consensual and consequently the defendant's subsequent consent to search was consensual.

In reviewing a suppression decision, an appellate court does not reweigh evidence or pass on the credibility of witnesses. *State v. Ackward*, 281 Kan. 2, 8, 128 P.3d 382 (2006). We are convinced the district court's findings are supported by substantial competent evidence. Maschmeier testified he returned all of the defendant's documents and told the defendant "he was free to go." Maschmeier testified the defendant shook Maschmeier's hand and apologized. The defendant then turned and began walking away before Maschmeier said, "By the way," and then asked the defendant about illegal contraband.

Maschmeier's testimony regarding the events is supported by the video of the stop admitted into evidence. Although there is no audio, the video shows, during the sequence in question, Maschmeier called the defendant to the back of the defendant's vehicle and returned the defendant's paperwork. Maschmeier and the defendant then disengaged for several seconds. The defendant walked toward the driver's door of his vehicle, and Maschmeier

walked back toward the driver's side of the patrol vehicle. As Maschmeier reached his car, he turned toward the defendant and said something. The defendant turned back toward Maschmeier. The defendant and Maschmeier then walked back toward each other and again met between the two vehicles while talking. A few seconds later, Maschmeier "patted-down" the defendant.

Given our Supreme Court's emphasis in *Thompson* on determining voluntariness based upon the totality of the circumstances and repeated disapproval of any bright-line rule, we understand it would be improper to apply a rule that Maschmeier's failure to ask permission to ask additional questions, and the defendant's failure to explicitly grant such permission, automatically made the ensuing encounter an illegal seizure. Instead, the officer's failure to ask permission should be considered another factor in the totality of the circumstances test.

Now, we direct our discussion to objectively evaluating the totality of the circumstances here to determine whether a reasonable person would feel free to refuse to continue the encounter with Officer Maschmeier.

Weighing on the side of a voluntary encounter are the following factors: Maschmeier returned the defendant's documents, told the defendant he was free to go, and physically disengaged the defendant; there was only one officer present; there was no display of a weapon or physical touching by the officer; and the encounter occurred in a public place.

Weighing on the side of an illegal seizure are the following factors: Maschmeier did not ask the defendant permission to ask further questions before asking about the illegal contraband, and the officer's emergency lights remained on throughout the encounter.

The above factors supporting a voluntary encounter are strong enough to outweigh the factors supporting an illegal seizure. We affirm the district court's denial of the defendant's motion to suppress.

## The *Crawford* Issue

The defendant next argues his confrontation rights were violated when the district court admitted the KBI lab reports on the drugs

found in his vehicle without allowing the defendant an opportunity to cross-examine the KBI agent who conducted the analysis. The defendant contends the lab reports were improperly admitted under K.S.A. 22-3437, which statute the defendant contends is unconstitutional under *Crawford v. Washington,* 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004).

The State responds the defendant waived his right to confrontation by failing to comply with the provisions of K.S.A. 22-3437. We agree.

The constitutionality of a statute is a question of law subject to unlimited review. *State v. Henning,* 289 Kan. 136, Syl. ¶ 1, 209 P.3d 711 (2009). "A statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so." *Martin v. Kansas Dept. of Revenue,* 285 Kan. 625, 629, 176 P.3d 938 (2008).

K.S.A. 22-3437 allows for the admission in evidence of forensic examination reports provided they are prepared and certified in accordance with the provisions set forth in that statute. K.S.A. 22-3437(3) sets forth a "notice-and-demand" requirement for the admission of such reports and states:

"Whenever a party intends to proffer in a criminal or civil proceeding, a certificate executed pursuant to this section, notice of an intent to proffer that certificate and the reports relating to the analysis in question, including a copy of the certificate, shall be conveyed to the opposing party or parties at least 20 days before the beginning of a hearing where the proffer will be used. An opposing party who intends to object to the admission into evidence of a certificate shall give notice of objection and the grounds for the objection within 10 days upon receiving the adversary's notice of intent to proffer the certificate. Whenever a notice of objection is filed, admissibility of the certificate shall be determined not later than two days before the beginning of the trial. A proffered certificate shall be admitted in evidence unless it appears from the notice of objection and grounds for that objection that the conclusions of the certificate, including the composition, quality or quantity of the substance submitted to the laboratory for analysis or the alcohol content of a blood or breath sample will be contested at trial. A failure to comply with the time limitations regarding the notice of objection required by this section shall constitute a waiver of any objections to the admission of the certificate. The time limitations set forth in this section may be extended upon a showing of good cause."

Here, the State filed its notice of intent to proffer the lab reports on October 5, 2006. The defendant did not raise any objection to the lab report until a motions hearing on April 2, 2007, 2 days before trial. The State argues the defendant's objection was untimely under the notice-and-demand statute by a matter of months. The district court overruled the defendant's objection based on the objection's untimely nature and because the defendant's defense was the substances identified in the lab report were not the defendant's drugs. When the State moved to admit the lab report at trial, the defendant objected on *Crawford* grounds, and the defendant's objection was overruled.

This issue is controlled by our Supreme Court's recent decision in *State v. Laturner*, 289 Kan. 727, Syl. ¶¶ 1-3, 218 P.3d 23 (2009).

In *Laturner*, our Supreme Court examined the United States Supreme Court's decision in *Melendez-Diaz v. Massachusetts*, 557 U.S. ___, 174 L. Ed. 2d 314, 129 S. Ct. 2527 (2009), which applied the principles from *Crawford* and held that the admission of a forensic laboratory certificate of analysis without the testimony of the analyst violates a criminal defendant's rights under the Confrontation Clause. 289 Kan. at 728.

The *Laturner* court applied *Melendez-Diaz* to K.S.A. 22-3437, severing, "in any case where the right of confrontation arises under the Sixth Amendment to the United States Constitution," the third and fourth sentences of K.S.A. 22-3437(3), which place an unconstitutional burden on a criminal defendant asserting his or her right to question a witness. 289 Kan. at 752-53. However, the *Laturner* court also noted that *Melendez-Diaz* states the "simplest form" of "notice-and-demand statutes," requiring a defendant to object to the admission of evidence under the statute within a specified time following notice of intent to proffer by the prosecution, is constitutional. *Laturner*, 289 Kan. at 751. Therefore, the *Laturner* court did not strike the objection, timing, and waiver provisions from K.S.A. 22-3437(3), as they "mirror the simplest form of a notice-and-demand statute." 289 Kan. at 740.

Thus, under *Laturner*, the objection, timing, and waiver provisions of K.S.A. 22-3437(3) remain in effect. The defendant here

did not properly object under these provisions to the admission of the lab report within 10 days of receiving the State's notice of intent to proffer and therefore he waived his objection to the admission of the lab report. Under *Laturner*, the district court did not err in overruling the defendant's objection for being untimely raised under K.S.A. 22-3437(3).

Affirmed.

\* \* \*

GREENE, J., dissenting: The majority opinion has faithfully attempted to apply the applicable rules from *State v. Thompson*, 284 Kan. 763, 166 P.3d 1015 (2007), to the facts before us. Despite this faithful attempt, I am compelled to dissent because I simply do not agree that a reasonable person would have felt free to go under the totality of the circumstances presented here. As the majority agrees, this is the ultimate test for a transition to a voluntary encounter, and we review the district court's determination de novo. 284 Kan. at 776.

Relying solely on the officer's testimony, the key aspect of the encounter occurred after a written warning had been issued for speeding and was related as follows:

"A. After I had given him all of his documents back, his driver's license and whatever paperwork I had, I told him he was free to go.

"Q. Okay.

"A. He turned—or first of all, he turned to shake my hand and then told me that he was sorry, he was apologetic again. He turned and started walking away, and then I said, 'By the way,' and he turned around and looked at me.

. . . .

"Q. After you asked him, 'By the way,' and he came back, what did you ask him?

"A. Asked him, 'You don't happen to have any illegal contraband in the vehicle, uh, any drugs, alcohol, weapons?' and he said no, he did not."

Remembering that the determination whether a reasonable person would have felt free to terminate the encounter is fact driven, no list of factors is exhaustive or exclusive. 284 Kan. at 811. And among such unspecified factors is precisely what words are spoken by the officer. Here, unlike in *Thompson*, the officer did not first

seek permission to ask more questions but simply stated, "By the way," and proceeded with his questioning about the contents of the vehicle. The precise question before us is how a reasonable person would interpret the remark "By the way." Does it signal a need to continue the *prior* detention or does it indicate a desire to spark up a brand new conversation?

"By the way" is "an incidental remark thrown in, and *tending the same way as the discourse itself*." (Emphasis added.) Evan's Brewer's Dictionary of Phrase and Fable 177 (Centenary ed. rev. 1981). I respectfully contend that when the phrase is used shortly after a previous conversation, it indicates an afterthought and its common meaning is "and another thing" or "also." To a reasonable person, the use of the phrase after being told one is "free to go" would suggest a need to reengage the prior conversation for an afterthought. It is difficult for me to believe that a reasonable person under the totality of these circumstances would just walk back to his or her vehicle, blowing off the officer's remark, "By the way." Thus, I would hold under a totality of the circumstances that a reasonable person would not feel free to terminate the encounter and drive away.

I recognize that we are bound by *Thompson,* but I do not read *Thompson* to indicate that we are to alter our case-by-case analysis in these circumstances. Indeed, *Thompson* emphasizes the fact-driven nature of the issue. See 284 Kan. at 811. Here, the officer's conduct, and specifically his words, signaled a command for further conversation that a reasonable person would interpret as an extension of the detention—not an invitation for a brand new and voluntary conversation.

Finally, I take this opportunity to question the direction of our jurisprudence in this area. Starting from the proposition that respect for law enforcement is absolutely critical to our democracy, we should be mindful of how our caselaw may influence civil discourse between our citizens and law enforcement. Our law enforcement officers earn daily the appreciation and respect of all Kansans. An objective examination of the trend of recent decisions, however, might lead our citizenry to think that when encountered by a law enforcement official, they should say as little as possible,

answer no questions until commanded to do so, decline any co-operation until commanded otherwise, and terminate the encounter even if walking away may seem quite rude and disrespectful.

I would argue that the defendant here demonstrated a healthy respect for law enforcement by his complete cooperation and, ultimately, by his offer of an apology and a handshake. His return for conversation with the officer based solely on the officer's remark, "By the way," was arguably a common courtesy and a further extension of his cooperation rather than ignoring or disrespecting the officer's authority. Based on the majority opinion, however, Murphy's common courtesy led to a forfeiture of his fundamental constitutional rights. It is unfortunate that we have encouraged indifference or disrespect rather than cooperation, given the fundamental need for a respectful attitude toward our law enforcement officers.

With due respect to the majority, I would hold that Murphy's consent to search of his vehicle was an illegal extension of his detention for speeding, and I would suppress the evidence resulting from the search.