No. 100,178

STATE OF KANSAS, *Appellee*, v. ANTHONY R. MURPHY, *Appellant*.

(293 P.3d 703)

Opinion filed February 1, 2013.

*Shawn E. Minihan*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Tony Cruz*, assistant county attorney, argued the cause, and *Steve Six*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

*Per Curiam*: Anthony R. Murphy was charged with and convicted of possession of cocaine with intent to sell and possession of cocaine without a tax stamp. The Court of Appeals affirmed his

convictions in *State v. Murphy*, 42 Kan. App. 2d 933, 219 P.3d 1223 (2009). In September 2010, we granted Murphy's petition for review on the issue of whether the traffic stop became a voluntary encounter before Murphy gave consent to search.

## FACTUAL BACKGROUND

On June 22, 2006, Deputy Mark Maschmeier, of the Geary County Sheriff's Department, observed Anthony Murphy driving 79 miles per hour on I-70, where the posted speed limit is 70 miles per hour. The deputy turned on his emergency lights and initiated a traffic stop at 6:49 a.m. He approached the car and obtained Murphy's driver's license and rental car papers. Deputy Maschmeier returned to his car to run Murphy's driver's license through dispatch while writing out a warning for speeding. Murphy had a valid Colorado license and his rental paperwork was in order.

Maschmeier walked back to Murphy's vehicle and gestured for Murphy, who was now outside of his car, to join him at the back of the vehicle. He had Murphy sign the warning while they were both standing between their respective vehicles. Maschmeier then returned Murphy's driver's license and other paperwork, told Murphy he was free to go, and a brief handshake was exchanged.

In the next several seconds, Murphy took two or three steps toward his car and Maschmeier turned and took one or two steps toward his own vehicle. The deputy then turned back and said, "By the way"—Murphy then turned around and looked at the deputy—"You don't happen to have any illegal contraband in the vehicle, uh, any drugs, alcohol, weapons?" Murphy denied having any such things in his car. Maschmeier then asked if Murphy would mind if he searched the vehicle. When Murphy consented to a search of the car, he asked if he could pat Murphy down. After conducting a pat-down search of Murphy, Maschmeier got the passenger out of the car and patted her down as well. During the search of the vehicle, Murphy voluntarily gave the deputy the keys to open locked suitcases in the trunk. Maschmeier eventually found 107.92 grams of crack cocaine in a fanny pouch in the spare tire compartment of the trunk. The emergency lights on the police vehicle remained on during the entire exchange and subsequent search.

## Voluntary Encounter

The only issue in this case is whether the traffic stop became a voluntary encounter before Murphy consented to the search of his vehicle. In *State v. Thompson*, 284 Kan. 763, 779-93, 166 P.3d 1015 (2007), we carefully reviewed the United States Supreme Court jurisprudence that frames the central principles guiding our analysis in this exact scenario.

### Standard of Review

"Appellate review of the trial court's determination of whether a reasonable person would feel free to refuse the officer's requests or otherwise terminate the encounter consists of two parts: (1) the factual underpinnings are reviewed under a substantial competent evidence standard and (2) the ultimate legal conclusion drawn from those facts, *i.e.*, whether a reasonable person would feel free to refuse the requests or to terminate the encounter, is reviewed under a de novo standard. [Citation omitted.]" *Thompson*, 284 Kan. at 776.

### Analysis

Ordinarily, the court must determine first whether the trial court's factual findings are supported by substantial competent evidence. But Murphy does not challenge the underlying factual findings. Instead, Murphy contends that the Court of Appeals erred in making its ultimate legal conclusion.

After the conclusion of a seizure pursuant to a traffic stop, the encounter with law enforcement may continue if it becomes consensual. See *Thompson*, 284 Kan. at 796-97. The continued encounter will be deemed consensual if under the totality of the circumstances the officer's conduct conveys to a reasonable person that he or she was free to refuse the request or otherwise terminate the encounter. 284 Kan. at 775.

Under *Thompson*, the court conducts a de novo review of whether a reasonable person would have felt free to refuse the officer's request or terminate the encounter under the totality of the circumstances. 284 Kan. at 776. In *Thompson*, we set forth a nonexclusive list of factors that frequently occur in this type of encounter to aid in our consideration of the totality of the circumstances. Those factors that tend to establish a voluntary encounter include: "knowledge of the right to refuse, a clear communication

that the driver is free to terminate the encounter or refuse to answer questions, return of the driver's license and other documents, and a physical disengagement before further questioning." 284 Kan. at 811. Factors that tend to establish a continued detention include:

"the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, the use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory, the prolonged retention of a person's personal effects such as identification, a request to accompany the officer somewhere, interaction in a nonpublic place, absence of other members of the public, or the display of emergency lights. [Citations omitted.]" *Thompson* 284 Kan. at 811.

No single factor is legally dispositive. Moreover, the court does not merely count the factors weighing on one side versus the number of factors weighing on the other. 284 Kan. at 803-04. Instead, in the totality of the circumstances, one factor may be more indicative of a coercive atmosphere (or conversely of a consensual encounter) in one case than it is in another. 284 Kan. at 804.

This case is factually very similar to *Thompson*. In *Thompson*, the officer pulled over the defendant for a faulty headlight. After returning the defendant's driver's license, issuing a verbal warning, and telling the defendant to have a nice day, the officer turned to walk away. Within a second or two, the officer returned and asked, "By the way, can I ask you a few questions?" 284 Kan. at 769. The defendant agreed and ultimately consented to a search of his vehicle that yielded drug paraphernalia and a baggie with powder residue.

Though very similar, this case presents slightly different facts. We review the totality of the circumstances presented here to determine whether a reasonable person would have felt free to refuse the officer's request or to terminate the encounter. Here, Murphy was outside his vehicle when Deputy Maschmeier returned his driver's license and car rental papers. The deputy told Murphy he was free to go, shook hands with Murphy, and physically disengaged by stepping toward his car while Murphy walked around his car toward the driver's seat. Both Murphy and Maschmeier were outside their vehicles when the deputy asked, "By the way, you

don't happen to have any illegal contraband in your vehicle—any drugs, alcohol, weapons?" After obtaining Murphy's consent to search the vehicle, Maschmeier also asked to, and did, conduct a pat-down search of Murphy.

Moreover, Deputy Maschmeier was the only law enforcement officer present. He did not display his weapon or use aggressive language or a tone of voice indicating that compliance with his request was compulsory. The encounter was in a public place, and he did not request Murphy to accompany him to another location. These factors support the conclusion that the encounter was voluntary, despite the fact that Maschmeier did not ask Murphy's permission to ask additional questions or turn off his emergency lights. Although the deputy conducted a pat-down search, this physical touching occurred after Murphy consented to a search of his vehicle. Having considered the totality of the circumstances, we conclude, as we did in *Thompson,* that a reasonable person would have felt free to refuse Deputy Maschmeier's request or to terminate the encounter. Therefore, we hold that Murphy gave consent to search his vehicle during a voluntary encounter with the officer.

Affirmed.

MORITZ, J., not participating.

BRENDA M. CAMERON, District Judge, assigned.

\* \* \*

ROSEN, J., dissenting: I respectfully dissent from the majority opinion, which concludes that the encounter between Deputy Mark Maschmeier and Anthony R. Murphy was voluntary. The touchstone of a voluntary encounter is whether a reasonable person under the totality of the circumstances would have felt free to leave or terminate the encounter. Under the totality of the circumstances

presented here, as I joined in the dissenting opinion in *State v. Thompson*, 284 Kan. 763, 813, 166 P.3d 1015 (2007) (Beier, J., dissenting), I do not believe that a reasonable person would have felt free to terminate the encounter and simply get in his or her car and drive away.

Watching the video of this traffic stop, less than 3 seconds passed between the almost imperceptible handshake and the officer's question. Particularly troubling, given this timeframe, Deputy Maschmeier began the supposed voluntary encounter with the phrase "By the way." As Judge Greene of the Court of Appeals stated in his dissent:

"The precise question before us is how a reasonable person would interpret the remark 'By the way.' Does it signal a need to continue the prior detention or does it indicate a desire to spark up a brand new conversation?

" 'By the way' is 'an incidental remark thrown in, and *tending the same way as the discourse itself.*' (Emphasis added.) Evan's/Brewer's Dictionary of Phrase and Fable 177 (Centenary ed. rev. 1981). I respectfully contend that when the phrase is used shortly after a previous conversation, it indicates an afterthought and its common meaning is 'and another thing' or 'also.' To a reasonable person, the use of the phrase after being told one is 'free to go' would suggest a need to reengage the prior conversation for an afterthought. It is difficult for me to believe that a reasonable person under the totality of these circumstances would just walk back to his or her vehicle, blowing off the officer's remark, 'By the way.' Thus, I would hold under a totality of the circumstances that a reasonable person would not feel free to terminate the encounter and drive away." *State v. Murphy*, 42 Kan. App. 2d 933, 943, 219 P.3d 1223 (2009) (Greene, J., dissenting).

No one initiates a conversation with the expression "By the way" unless they are referring back to some previous encounter. It is a phrase conveying continuity of a previous topic of conversation. The officer's use of the phrase in this instance would lead a reasonable person to believe that whatever followed was an extension of the traffic stop —a related question or a forgotten detail. As Justice Beier aptly stated in our dissent in *Thompson*, the majority "expects far too much chutzpah from a person in the defendant's position." 284 Kan. at 814. A reasonable person would not feel free to disregard the question, get in his or her car and drive away.

With due respect to the majority, I would find that Murphy's consent to the search was given during an illegal extension of the initial traffic stop.

BEIER and JOHNSON, JJ., join in the foregoing dissenting opinion.