NOT DESIGNATED FOR PUBLICATION

No. 121,138

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOSE L. RODRIGUEZ,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed June 12, 2020. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., LEBEN and BRUNS, JJ.

LEBEN, J.: Jose L. Rodriguez appeals the district court's summary dismissal of his request for habeas corpus relief under K.S.A. 60-1507. In his habeas motion, he alleged that the attorney who had represented Rodriguez at his criminal trial provided constitutionally inadequate representation when he didn't try to suppress key evidence found during the search of a car in which he was a passenger. The district court found that the record conclusively showed that such a motion had no chance of success because Rodriguez lacked standing to challenge the car search. So it dismissed the motion without holding an evidentiary hearing.

If specific facts are alleged that would support a habeas claim, the district court usually must hold an evidentiary hearing unless the information available to the court shows that there's no possibility the claim would succeed. Rodriguez argues that a suppression motion would have succeeded because the items found in the car and used against him at trial were the product of an unlawfully extended car stop. But Rodriguez provides no evidence that the officer extended the stop by asking the driver more questions. With no allegation of facts that—if presented at a hearing—would support a successful claim, no evidentiary hearing was needed.

In addition, the record before the court affirmatively showed that the initial car stop turned into a voluntary encounter. A suppression motion challenging evidence found after a voluntary encounter was certain to fail, so his attorney's failure to file one couldn't have caused any harm to Rodriguez. We therefore affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*The Car Stop*

Rodriguez' road to our court began with a car stop in Emporia back in 2014. Deputy Heath Samuels stopped Joni Beemer's car when she failed to use her turn signal. Rodriguez was a passenger in the car. Beemer didn't have her license with her, but Samuels radioed dispatch and confirmed that it was valid. He also radioed Deputy Cory Doudican for backup and confirmed that Beemer had no arrest warrants. Then he told Beemer to use her turn signal next time and to have a nice day.

Right after that, Samuels asked Beemer if he could ask her more questions. She said yes, so he asked her if there were any drugs in the car. She said no. He asked if he could search the car. When she replied, "[I]f you really think it's necessary," he said it was her choice. She said that she didn't mind him searching.

2

Samuels asked her and Rodriguez to step out of the car. When Samuels asked Rodriguez for identification, he provided a Kansas ID card. Dispatch told Samuels that Rodriguez had an outstanding arrest warrant, and Samuels handcuffed Rodriguez.

When Doudican arrived, Samuels was questioning Beemer. Samuels told Doudican that Beemer had consented to a search of the car. When the officers searched the car, they found $1,403 between the center console and the front passenger's seat. And they found two pipes underneath some trash in the front passenger door—a glass pipe with methamphetamine residue on it and a metal pipe with marijuana residue on it. Rodriguez said that everything in the passenger door was his. Beemer was arrested and taken to the county jail, where an officer found 21.85 grams of methamphetamine on her person.

*The Trial and Appeal*

The State charged Rodriguez with several offenses, including possession of methamphetamine with an intent to distribute and two counts of possession of drug paraphernalia. The court appointed attorney Nick Heiman to represent him. Rodriguez pleaded not guilty on all charges and requested a jury trial. At the one-day trial, the State admitted the items from Beemer's car into evidence (the money and both pipes). And the State admitted the methamphetamine found on Beemer at the county jail.

Beemer testified at trial that the meth was hers. She said she put it in her pants as she was pulled over. Before that, she said, it was in a zipped-up digital-camera case on the floorboard behind her seat. Since she was driving, she said that she did have Rodriguez get the case and hand it to her. She said that he hadn't known that there was meth in the car.

3

But an investigator testified that Beemer's testimony conflicted with what she had said in an earlier interview. Carlton Heller, an investigator for the prosecutor, said that Beemer told him in an interview that Rodriguez had opened the case, taken out the baggies containing meth, and asked her to hide them. Beemer also told Heller that the meth belonged to both Rodriguez and her, and that they were selling it for money because Rodriguez had lost his job.

The jury found Rodriguez guilty of possession of methamphetamine with an intent to distribute and of two counts of possession of drug paraphernalia. He appealed his convictions, challenging the sufficiency of the evidence on the methamphetamine offense and objecting to one of the jury instructions; our court affirmed the district court. *State v. Rodriguez*, No. 114,424, 2016 WL 6568745, at *1, 2-4 (Kan. App. 2016) (unpublished opinion).

*The Habeas Motion*

After losing his appeal, Rodriguez filed for habeas relief under K.S.A. 60-1507 to set aside his convictions. He alleged, among other things, that Heiman had provided constitutionally inadequate representation at his trial. The State moved to dismiss without a hearing because Rodriguez hadn't shown that Heiman had provided inadequate representation.

Rodriguez amended the motion to allege that Heiman had performed inadequately by not moving to suppress the evidence found in Beemer's car. He suggested that was unreasonable because Samuels had violated the Fourth Amendment when he asked Beemer more questions and obtained her consent to a search. Rodriguez also argued that Beemer's consent may have been involuntary. Because a suppression motion likely would have affected the trial's outcome, Rodriguez said, Heiman provided inadequate representation for not filing one.

4

The State moved again for dismissal, this time arguing that a suppression motion would have failed because Rodriguez lacked standing to contest the search of Beemer's car. The State also argued that Heiman couldn't have suppressed the methamphetamine because police found it on Beemer at the jail.

Rodriguez responded to those arguments in a supplemental brief. He listed factors that affect whether an encounter with the police is voluntary or an investigatory stop. He asserted that some of those factors applied but cited no factual support for that claim. And he repeated his claim that Samuels had unlawfully extended the stop by asking Beemer more questions after finishing the turn-signal investigation. On the standing issue, Rodriguez agreed that he could not challenge the search of Beemer's car. But he could challenge the allegedly unlawful extension of the stop, he argued, seeking to exclude the car evidence as the fruits of that unlawful seizure.

In a response brief, the State said that Rodriguez had standing to challenge only the validity of the initial car stop. And it said that a hearing wasn't required because Rodriguez hadn't provided evidentiary support for his claims.

In a three-page decision, the district court dismissed Rodriguez' motion. To make its ruling, the court reviewed not only the motion but the full record of Rodriguez' criminal case, including the evidence presented at trial. The court found that although Rodriguez had standing to contest the validity of the initial stop, he hadn't alleged that the stop was improper. The court also found that Rodriguez lacked standing to contest the search as a passenger because he claimed no legitimate expectation of privacy in Beemer's car. And even if he could contest the search, the court found that the methamphetamine wouldn't have been suppressed because it was found on Beemer at the county jail, not in her car. So the court dismissed his motion without a hearing because it

concluded that the record conclusively showed that he had no right to relief on his ineffective-assistance-of-counsel claim.

Rodriguez then appealed to our court.

ANALYSIS

Rodriguez says the district court should have held a hearing on his motion because the record doesn't conclusively show that he had no right to relief on his ineffective assistance of counsel claim. See *Wilkinson v. State*, 40 Kan. App. 2d 741, 746, 195 P.3d 278 (2008). To succeed on that claim, he had to show two things. First, he had to show that his attorney had performed deficiently in some aspect of his trial. Second, he had to show prejudice—there must have been a reasonable probability that the trial outcome would have been different but for Heiman's deficient performance. See *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

*Standard of Review*

Before we look more fully at Rodriguez' claims, we must first settle a dispute between the parties about the standard of review we should use in this appeal.

Under K.S.A. 60-1507, the movant must show that an evidentiary hearing is warranted. Doing so requires more than mere conclusory allegations—there must be an evidentiary basis for the movant's claims in the existing record or from new allegations. *Wilkinson*, 40 Kan. App. 2d at 746. If the record conclusively shows that the movant has no right to relief, then the district court can dismiss the motion without holding a hearing. If it does so, appellate courts exercise unlimited review over its decision. *Sprague*, 303 Kan. at 425. Here, the district court didn't hold a hearing, so the summary-dismissal standard applies.

6

The State disagrees. It says a different standard should apply because the judge functionally held a hearing by considering supplemental briefs and making detailed findings in its decision. But a court doesn't conduct a hearing by considering supplemental briefs. See *Stewart v. State*, 310 Kan. 39, Syl. ¶ 3, 444 P.3d 955 (2019) (holding that a judge doesn't hold a "hearing" under the Due Process Clause when it considers the State's response to a K.S.A. 60-1507 motion); *Dawson v. State*, 310 Kan. 26, Syl. ¶ 3, 444 P.3d 974 (2019) (same, when the judge requests extra briefing on an issue). And the State cites no authority for the proposition that making detailed findings transforms a court's decision into a hearing. In short, the summary-dismissal standard applies because the district court didn't hold a hearing.

*Standing*

Recall that Rodriguez alleges that Heiman provided inadequate representation because he didn't move to suppress the evidence from Beemer's car. Had Heiman done so, the motion would have had to show that the officers obtained the evidence in violation of the Fourth Amendment. But not just any violation would support suppression—Rodriguez had to show that the unlawful search or seizure happened *to him*. In other words, he had to have standing.

The standing requirement reflects a simple principle: because Fourth Amendment rights are personal, the defendant cannot assert them on behalf of others. So the person challenging a search or seizure as unlawful must have been searched or seized. *Rakas v. Illinois*, 439 U.S. 128, 133-34, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978).

This issue often arises when police search a car. A search is an invasion of a person's legitimate expectation of privacy. But passengers usually have no legitimate privacy expectation in a driver's car, so they suffer no personal Fourth Amendment

7

violation when the car is searched. They therefore lack standing to contest the validity of the search on the driver's behalf. *Rakas*, 439 U.S. at 148-49; *State v. Gilbert*, 292 Kan. 428, 432-34, 254 P.3d 1271 (2011).

That's not always the case, though. For example, a passenger may contest a search if the passenger claims a possessory or proprietary interest in the car or the area searched. Or a passenger may claim ownership of items in the car. *Rakas*, 439 U.S. at 148; *Gilbert*, 292 Kan. at 435. But ownership alone cannot establish the passenger's legitimate expectation of privacy in the car. *Rawlings v. Kentucky*, 448 U.S. 98, 105, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980).

Under these principles, the district court properly found that Rodriguez lacked standing to contest the search of Beemer's car. As a passenger, Rodriguez had no expectation of privacy in the car. He claimed no possessory or proprietary interest in the car or the area searched. He did claim to own the pipes in the car, and that's some evidence of a privacy expectation. But it cannot, by itself, create standing to contest the search. 448 U.S. at 105. Because he alleged no other facts showing that he had a legitimate expectation of privacy in Beemer's car, the district court correctly found that he lacked standing to contest the search.

Even so, we can't end the analysis at that point. A passenger who lacks the privacy interest that's needed to contest a car search may still contest the traffic stop that led to the search. When the police stop a car, both the driver and the passenger have been seized. So the passenger, like the driver, experiences a Fourth Amendment violation if the initial stop is invalid. *Brendlin v. California*, 551 U.S. 249, 255-57, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007); *State v. Epperson*, 237 Kan. 707, 717-18, 703 P.2d 761 (1985). The same is true if the initial stop is valid but the officer unlawfully extends the stop. See *Brendlin*, 551 U.S. at 259; 3 LaFave, Israel, King & Kerr, Criminal Procedure § 9.1(d)

8

(4th ed. 2018). In both cases, the passenger (like the driver) may seek to exclude the fruits of the unlawful seizure later found in the car.

Rodriguez had standing on that basis. He alleges that Samuels unlawfully extended the stop by asking Beemer more questions after completing the investigation of the turn-signal offense. If that's true, then Rodriguez suffered a Fourth Amendment violation because he too was seized. And Heiman could have moved to exclude the evidence found in the car as the fruit of that unlawful seizure. So the district court was wrong to find that a suppression motion was certain to fail on standing grounds. Yet its decision can still be affirmed because the motion would have failed for a different reason: Rodriguez alleges no facts showing that Samuels unlawfully extended the stop.

*Extension of the Car Stop*

To state a claim for ineffective assistance, Rodriguez must show that he was prejudiced by Heiman's failure to file a motion to suppress. That means he must show two things: "that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). There's a reasonable probability that the verdict on the drug paraphernalia charges would have been different if the pipes had been excluded (it's hard to prove that a person possessed drug paraphernalia with no drug paraphernalia to show the jury). But Rodriguez can't show prejudice because under basic Fourth Amendment principles, his claim is meritless.

To suppress the evidence from Beemer's car, Rodriguez would have had to show that Samuels unlawfully extended the car stop. An officer can lawfully extend a car stop beyond the scope and duration of the initial investigation in two circumstances. First, the officer may develop reasonable suspicion for a new offense while investigating the

9

offense for which the officer began the stop. Second, the stop may transform into a voluntary encounter that's not a seizure at all—it's a consensual interaction if a reasonable person under the circumstances would feel free to leave. Many factors affect that analysis, though no single factor is dispositive. See *State v. Thompson*, 284 Kan. 763, Syl. ¶¶ 7-9, 17-24, 166 P.3d 1015 (2007). So a suppression motion filed by Heiman would have had merit only if Samuels had no new reasonable suspicion and if the interaction with Beemer did not become a voluntary encounter.

No one claims that Samuels developed reasonable suspicion for a new offense while investigating the turn-signal violation. Reasonable suspicion requires specific and articulable facts that criminal activity is afoot. *Thompson*, 284 Kan. 763, Syl. ¶ 6. Both parties agree that Samuels had reasonable suspicion to pull over Beemer because he saw her commit a traffic offense. And they agree that he didn't develop reasonable suspicion for a new offense while investigating the traffic offense. So when he asked Beemer more questions, Rodriguez says that he unlawfully extended the stop. But that would only be true if the stop didn't become a voluntary encounter.

The only evidence in the record (a statement from Samuels that Rodriguez attached to his habeas claim) shows that it did. After issuing a warning and telling Beemer to have a good day, Samuels asked if he could ask her more questions. She said yes. When he began the additional questioning, he was the only officer present and he didn't have Beemer's driver license or other documents (because she'd left them at home). Samuels asked if there were any drugs in the car, and Beemer said no. Then he asked if he could search the car, to which she replied, "[I]f you really think it's necessary." He told her that it was her choice. She told him she didn't mind him searching. Based on that evidence (and Rodriguez has made no factual allegations to counter it), the encounter was voluntary because a reasonable person would have felt free to leave under those circumstances. See *State v. Murphy*, 296 Kan. 490, 493-94, 293 P.3d 703 (2013); *Thompson*, 284 Kan. at 773.

10

Rodriguez hasn't alleged that any of the factors that render an encounter involuntary existed. For example, courts often consider indicators of a coercive environment, like the display of a weapon, physical touching, or the use of aggressive language or a vocal tone suggesting that compliance with the officer's request is required. *Thompson*, 284 Kan. at 811. But Rodriguez hasn't pointed to anything in the record from his criminal case that suggests those factors existed here. Nor has he alleged their existence based on new evidence.

The closest Rodriguez got to alleging these factors was in his supplemental filing in the district court. That brief acknowledged that courts consider many factors, including the ones just mentioned, when deciding whether an encounter was voluntary. From the "bare facts," he said that several of these factors applied. Yet he provided no evidentiary support for that contention, either from the record or from new allegations. Without evidence, his conclusory statement that the stop was involuntary doesn't warrant an evidentiary hearing.

To recap, the record conclusively shows that Rodriguez isn't entitled to relief on his ineffective-assistance claim. He based that claim on Heiman not moving to suppress evidence found in Beemer's car. But Rodriguez couldn't receive relief on that claim without showing prejudice—he had to prove that the suppression motion had merit so that the failure to file it affected the trial outcome. A suppression motion was meritless, however, if the encounter that led to the discovery of the items to be suppressed was voluntary. And Rodriguez provides no evidence that Samuels' additional questioning of Beemer was involuntary.

Because the record conclusively shows that Rodriguez isn't entitled to relief for his ineffective-assistance claims, we affirm the district court's judgment.

11