IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,282

STATE OF KANSAS,
*Appellee*,

v.

GERALD E. CLEVERLY, JR.,
*Appellant.*

SYLLABUS BY THE COURT

1.

The Fourth Amendment to the United States Constitution protects the right of an individual to be secure in his or her person and effects and not to be subject to unreasonable searches and seizures by the government. Any warrantless search or seizure is presumptively unreasonable unless it falls within one of Kansas' recognized exceptions to the search warrant requirement.

2.

A valid traffic stop—based on the officer's reasonable suspicion that a crime (including a traffic offense) is being committed—is a permissible seizure within the investigatory detention exception established by *Terry v. Ohio*, 392 U.S. 1, 18-19, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), so long as the scope and duration of the seizure is strictly tied to and justified by the circumstances that rendered the initiation of the stop proper.

3.

Although a defendant initiates a constitutional challenge to a search or seizure by filing a motion to suppress in the district court, it is the State that must carry the burden

1

of proving the legality of any challenged search or seizure. The defendant does not have the burden of proving that a warrantless search or seizure was illegal.

4.

Encounters with police generally fall into four categories: voluntary or consensual encounters; investigatory detentions; public safety stops; and arrests. A voluntary or consensual encounter is not considered a seizure under the Fourth Amendment to the United States Constitution.

5.

Given that an illegal seizure can taint the validity of a subsequent consent to search, the first step in a challenge to an allegedly consensual search is to review the legality of the seizure that preceded the search.

6.

The analysis of the voluntariness of an encounter must encompass the totality of the circumstances. In that totality of the circumstances context, the test is whether a reasonable person would feel free to disregard the officer's questions, decline the officer's requests, or otherwise terminate the encounter, but the person nevertheless chooses to voluntarily submit to a prolonged encounter.

7.

An individual's Fourth Amendment rights are personal, including those of a passenger in an automobile subjected to a traffic stop. A driver of a vehicle subjected to a traffic stop does not have the authority, as a matter of law, to waive the Fourth Amendment rights of the passengers in the stopped vehicle.

2

8.

A reasonable and prudent person's assessment of the voluntary nature of an encounter with a law enforcement officer would be informed by the involuntary manner in which it commenced. An officer who tells a person to exit a vehicle, puts hands on that person without consent, and directs the person to stand in front of the patrol car has not signaled to that person that he or she is totally free to disregard the officer's questions, decline the officer's requests, or otherwise terminate the encounter.

9.

Even where the law enforcement officers have engaged in illegal conduct, the poisonous taint of an unlawful search or seizure dissipates when the connection between the unlawful police conduct and the challenged evidence becomes attenuated. That attenuation doctrine looks at the following factors: (1) the time that elapsed between the illegality and the acquisition of the evidence sought to be suppressed, (2) the presence of any intervening circumstances, and (3) the purpose and flagrancy of the official misconduct. But no one factor is controlling, and other factors also may be relevant to the attenuation analysis.

10.

The individual rights assured to all citizens through the Bill of Rights of the United States Constitution, including the right to be free from unreasonable searches and seizures guaranteed by the Fourth Amendment, are not merely inconvenient technicalities designed to irritate governmental agents. If a search is unconstitutional, it is illegal, and its purpose cannot be labeled "valid."

11.

An unconstitutional seizure may infect or taint a consent to search as well as any fruits of a law-enforcement-citizen encounter if the nature of the seizure renders the

3

consent to search involuntary. Conversely, a voluntary consent to search can purge the primary taint of an illegal seizure where the connection between the lawless conduct of the law enforcement officer and the discovery of the challenged evidence has become so attenuated as to dissipate the taint.

12.

If, under the totality of the circumstances of a case, the nature of a defendant's unlawful seizure rendered his or her subsequent consent to a search involuntary, the district court must suppress the evidence seized pursuant to that involuntary consent.

Review of the judgment of the Court of Appeals in an unpublished opinion filed July 31, 2015. Appeal from Butler District Court; JANETTE L. SATTERFIELD, judge. Opinion filed December 23, 2016. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and remanded.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, argued the cause, and *Randall L. Hodgkinson*, of the same office, was on the brief for appellant.

*Joseph M. Penney*, assistant county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Gerald E. Cleverly, Jr., was a passenger in a vehicle detained for a traffic stop, after which a law enforcement officer conducted a series of searches of Cleverly and his effects, ultimately discovering methamphetamine in a cigarette package. Cleverly appealed his possession of methamphetamine conviction, claiming the district court erred in denying his motion to suppress the evidence obtained during an unlawful warrantless search. The Court of Appeals found that the final search of the cigarette

4

package was consensual and sufficiently attenuated from an earlier unlawful pat-down of Cleverly. We granted review, and we reverse the Court of Appeals and district court, remanding to the district court for further proceedings.

FACTUAL AND PROCEDURAL OVERVIEW

At approximately 1:15 a.m. on January 30, 2012, Cleverly was a passenger in a pickup driven by Chris Jones when El Dorado Police Officer Brent Michael Buckley stopped the vehicle based on the officer's observation that neither occupant of the pickup was wearing a seat belt. The officer would later testify that, after he activated his emergency lights to effect the traffic stop, he observed both occupants making "furtive movements."

About 3 minutes after the stop, Officer Sam Humig arrived on the scene and Officer Buckley asked him to identify the passenger in order to write a citation for a seat belt violation. Cleverly did not have identification on his person, but Officer Humig was able to use the name and date of birth provided by Cleverly to run a warrants check and discover that there was nothing outstanding on Cleverly. Neither officer issued Cleverly a traffic ticket.

Meanwhile, Officer Buckley's investigation of the driver, Jones, led to the issuance of a ticket for no proof of insurance. The officer directed Jones to exit and proceed to the rear of his vehicle where the officer would explain the ticket to Jones. Officer Buckley let Officer Humig know that his covert plan was to "attempt a consensual search of the vehicle, after giving Jones the citation." Accordingly, after having Jones sign the ticket and giving him the driver's copy, Officer Buckley asked Jones "if he had time for a couple more questions." Although the record is short on details, Cleverly does not dispute that Jones subsequently gave the officer consent to search the vehicle.

5

Prior to Officer Buckley's search of the vehicle, Officer Humig directed Cleverly to exit the vehicle and subjected him to a nonconsensual, involuntary pat-down search. That search produced no evidence. The officer then directed Cleverly to stand in front of Officer Buckley's vehicle during the search of Jones' vehicle. Cleverly placed the items he had carried out of the vehicle, including two packs of cigarettes and his cell phone, on the hood of the patrol car. Officer Humig and Cleverly engaged in conversation during Officer Buckley's vehicle search, and, at some point, Cleverly asked for, and was granted, permission to smoke. But Officer Humig denied Cleverly's request to make a call on his cell phone.

Officer Buckley's search of Jones' vehicle produced a glass pipe with scorch marks hidden in a pile of laundry between the driver and passenger seats. Officer Buckley suspected the pipe had been used to smoke methamphetamine. He arrested Jones and advised Officer Humig that he had found the pipe. Around that time, a third officer, Nicholas Piatt, arrived on the scene to assist.

Despite later testifying that he had no articulable facts suggesting that Cleverly had committed any crime, Officer Humig interrogated Cleverly, specifically seeking incriminating evidence as to whether Cleverly possessed marijuana, cocaine, or methamphetamine. Then, the officer requested consent to search Cleverly's person again. This second, more thorough, search did not produce any drugs or other incriminating evidence. Officer Humig then asked Cleverly if the officer could search the items on the patrol car hood, particularly the cigarette boxes because "this is where kids like to hide their weed these days." Cleverly handed the cigarette packages to the officer. One cigarette package was unopened, but the other had three small baggies behind the foil lining, two of which contained a white crystalline substance later confirmed to be methamphetamine.

Cleverly was arrested and charged with possessing methamphetamine and paraphernalia. The district court denied Cleverly's motion to suppress, ultimately determining that the search of the cigarette packages was based upon a valid consent. The case proceeded to a bench trial on stipulated facts; the State dismissed the paraphernalia count; the trial court convicted Cleverly on the methamphetamine charge; and the court imposed a nonprison sanction of 18 months' probation with an underlying prison term of 15 months.

Cleverly appealed to the Court of Appeals, arguing that he was illegally detained after the traffic stop ended and that the evidence from the cigarette package should have been excluded due to the taint of the illegal detention. The panel acknowledged that, for Fourth Amendment purposes, the execution of a traffic stop effects a seizure of a passenger in that vehicle, as well as the driver. But, citing to *State v. Spagnola*, 295 Kan. 1098, Syl. ¶ 3, 289 P.3d 68 (2012), the panel held that Jones agreed to transform the circumstance from a traffic stop detention to a voluntary encounter when he consented to Officer Buckley's search of his vehicle. Then, stepping out on its own, without citation to precedent, the panel promulgated a new rule, to-wit: "Thus, it follows that the passenger's presence becomes voluntary or consensual once the driver gives consent or voluntarily remains on the scene after the traffic stop concludes." *State v. Cleverly*, No. 111,282, 2015 WL 4716231, at *4 (Kan. App. 2015) (unpublished opinion).

The panel, noting that the video of the stop was not admitted into evidence, discounted Cleverly's assertions that he was detained for at least 18 minutes and that he was not allowed to use his phone. *Cleverly*, 2015 WL 4716231, at *5. Then, the panel found that Cleverly's continued presence was voluntary because three police officers were not a threatening presence and there was no testimony indicating officers used aggressive language or tone of voice, no prolonged retention of Cleverly's identification,

7

no request to accompany an officer somewhere, no interaction in a nonpublic place, no absence of other members of the public, and no display of emergency lights. *Cleverly*, 2015 WL 4716231, at *5 (citing *State v. Murphy*, 296 Kan. 490, 493, 293 P.3d 703 [2013]).

The panel did find that Officer Humig's pat-down search of Cleverly at the beginning of the "voluntary encounter" was not justified by the facts and circumstances that existed at the time, *i.e.*, was not a lawful search for officer safety. *Cleverly*, 2015 WL 4716231, at *5. Nevertheless, the panel noted that the State had not obtained any incriminating evidence from that search, suggesting that Cleverly had suffered no prejudice from the unlawful search during the voluntary encounter. *Cleverly*, 2015 WL 4716231, at *6.

Although the panel labeled the period during which Cleverly was searched multiple times as a voluntary encounter and not an investigatory detention, it nevertheless stated that even if this encounter was an investigatory detention, the ultimate discovery of the evidence was sufficiently attenuated from any illegal search as to be admissible. *Cleverly*, 2015 WL 4716231, at *6 (citing *State v. Talkington*, 301 Kan. 453, 484, 345 P.3d 258 [2015]). But then the panel declared, without further explanation, that an analysis of the attenuation factors was unnecessary "because we cannot say that the evidence would not have been found absent the allegedly illegal actions of the police." *Cleverly*, 2015 WL 4716231, at *6.

The panel affirmed the district court's denial of Cleverly's motion to suppress the evidence obtained from the search of his personal effects. We granted Cleverly's petition to review the panel's decision.

The Fourth Amendment to the United States Constitution protects the right of an individual to be secure in his or her person and effects and not to be subject to unreasonable searches and seizures by the government. *State v. Ryce*, 303 Kan. 899, 909, 368 P.3d 342 (2016). Section 15 of the Kansas Constitution Bill of Rights offers at least the same protections. *Ryce*, 303 Kan. at 909; *State v. Williams*, 297 Kan. 370, 376, 300 P.3d 1072 (2013). As the Court of Appeals noted, "[a]ny warrantless search or seizure is presumptively unreasonable unless it falls within one of Kansas' recognized exceptions to the search warrant requirement. [Citations omitted.]" *Cleverly*, 2015 WL 4716231, at *4.

A valid traffic stop—based on the officer's reasonable suspicion that a crime (including a traffic offense) is being committed—is a permissible seizure within the investigatory detention exception established by *Terry v. Ohio*, 392 U.S. 1, 18-19, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), so long as the scope and duration of the seizure is strictly tied to and justified by the circumstances that rendered the initiation of the stop proper. Here, the panel found that Officer Humig's request for consent to search Cleverly and his property "exceeded the scope and duration of the traffic stop, so it had to have been based on another exception in order to be legal." *Cleverly*, 2015 WL 4716231, at *4. The panel found the other exception was Cleverly's consent to the search while engaged in a voluntary encounter with the law enforcement officers. 2015 WL 4716231, at *7. We will look first at the panel's characterization of the encounter and then at the voluntariness of the consent.

*Standard of review and burden of proof*

When reviewing a motion to suppress evidence, the factual underpinnings of the district court's decision are reviewed for substantial competent evidence and the ultimate

legal conclusion is reviewed de novo. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). But if the material facts are not in dispute, the suppression issue simply presents a question of law subject to de novo review. *State v. Stevenson*, 299 Kan. 53, 57-58, 321 P.3d 754 (2014).

Although a defendant initiates a constitutional challenge to a search or seizure by filing a motion to suppress in the district court, it is the State that must carry the burden of proving the legality of any challenged search or seizure. See K.S.A. 22-3216(2); *State v. Estrada-Vital*, 302 Kan. 549, 556, 356 P.3d 1058 (2015); *Reiss*, 299 Kan. at 296. The defendant does not have the burden of proving that a warrantless search or seizure was illegal.

*Analysis*

*Voluntary Encounter*

Encounters with police generally fall into four categories: voluntary or consensual encounters; investigatory detentions; public safety stops; and arrests. *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007). Review of a motion to suppress often involves both a seizure and a search. Given that an illegal seizure can taint the validity of a subsequent consent to search, the first step is to review the legality of the seizure. *Thompson*, 284 Kan. at 772. As noted above, the Court of Appeals determined that, although Cleverly was initially subjected to an investigatory detention during the traffic stop, the encounter morphed into a voluntary encounter when the driver consented to remain on the scene to answer more questions and Cleverly did not leave. *Cleverly*, 2015 WL 4716231, at *4-5.

Certainly, the panel was correct in finding that Cleverly, as a passenger in the stopped vehicle, was seized for Fourth Amendment purposes by the traffic stop. See *State v. Smith*, 286 Kan. 402, 408, 184 P.3d 890 (2008) (citing *Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 [2007]), *cert. denied* 555 U.S. 1062 (2008). Likewise, we agree with the panel that the traffic stop could not justify Cleverly's detention beyond the time that Jones, the driver, was issued the traffic citation. See *Spagnola*, 295 Kan. at 1104 (detaining driver for purpose of issuing a ticket can become unlawful if prolonged beyond the time reasonably required to complete that lawful objective). Further, at the preliminary hearing, Officer Humig testified that when he asked Cleverly if he possessed marijuana, cocaine, or methamphetamine, the officer had no articulable facts that would indicate that Cleverly was illegally possessing any drugs, *i.e.*, the officer lacked the reasonable suspicion that would have permitted an independent investigatory detention. *Cf. Spagnola*, 295 Kan. at 1105 ("A police officer may extend the length of the traffic stop for questioning beyond the initial purpose of the traffic stop if the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or if the driver voluntarily consents to further questioning."). Consequently, to avoid an unlawful seizure in this circumstance the State must establish that, after Cleverly was released from the detention of the traffic stop, he voluntarily stayed at the scene and consensually conversed with Officer Humig. See *Williams*, 297 Kan. at 376 (citing *INS v. Delgado*, 466 U.S. 210, 216, 104 S. Ct. 1758, 80 L. Ed. 2d 247 [1984]; *State v. Lee*, 283 Kan. 771, 774-78, 156 P.3d 1284 [2007] [voluntary encounters are not seizures and do not trigger Fourth Amendment protections]).

There is precedent for this court upholding the State's argument that an involuntary detention can be converted into a voluntary encounter by the detaining officer's request for the detainee to answer additional questions. See *Thompson*, 284 Kan. at 773 (detainee's consent to answer a few more questions created voluntary encounter validating consent to search). But the analysis of the voluntariness of an encounter must

11

encompass the totality of the circumstances. In that totality of the circumstances context, the test is whether a reasonable person would feel free to disregard the officer's questions, decline the officer's requests, or otherwise terminate the encounter, but the person nevertheless chooses to voluntarily submit to a prolonged encounter. *Murphy*, 296 Kan. at 492; *Williams*, 297 Kan. at 377.

Before discussing Cleverly's individual circumstances further, we pause to address the Court of Appeals' newly minted holding that, because a passenger is seized for Fourth Amendment purposes during a traffic stop, "it follows that the passenger's presence becomes voluntary or consensual once the driver gives consent or voluntarily remains on the scene after the traffic stop concludes." *Cleverly*, 2015 WL 4716231, at *4. Syllogistically, the panel reached a faulty conclusion. An individual's Fourth Amendment rights are personal. See *Payton v. New York*, 445 U.S. 573, 589, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980) ("The Fourth Amendment protects the *individual's* privacy in a variety of settings." [Emphasis added.]); *Rakas v. Illinois*, 439 U.S. 128, 133, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978) ("'Fourth Amendment rights are *personal rights*.'" [Emphasis added.]). The driver's waiver of his own Fourth Amendment rights by consenting to a voluntary encounter and consensual vehicle search cannot, as a matter of law, be deemed a waiver of the passenger's personal Fourth Amendment rights. If Cleverly's continued presence at the scene of the investigatory detention had transformed into a voluntary encounter, the change must have been based on Cleverly's own individual acts and personal circumstances.

Likewise, the State's attempt to analogize this circumstance to the facts of *United States v. Drayton*, 536 U.S. 194, 122 S. Ct. 2105, 153 L. Ed. 2d 242 (2002), and *Florida v. Bostick*, 501 U.S. 429, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991), is unavailing. Those cases involved law enforcement officers who boarded a bus, questioned passengers, and requested consent to search their belongings. Those courts found that if the passengers

12

felt as if they could not leave, it was because they were on a bus, not because of the police presence on the bus. *Drayton*, 536 U.S. at 203-04; *Bostick*, 501 U.S. at 436. Here, Cleverly exited Jones' vehicle with a cell phone with which he could have made arrangements for other transportation. But Officer Humig directed Cleverly to stand at the patrol car and refused to let him make a call, *i.e.*, it was the police presence that precluded Cleverly from leaving, rather than his choice to ride in Jones' pickup.

Turning to the totality of the circumstances presented in the record before us relating to Cleverly's individual, personal Fourth Amendment rights, we find no support for the State's metamorphosis theory. An exchange between defense counsel and Officer Humig at the suppression hearing is instructive as to the official control the officer exerted over Cleverly's movements and actions, to-wit:

> "[Defense counsel] Okay. Did you inform Mr. Cleverly of his Miranda Rights before you asked those questions?
> "[Officer Humig] No, I didn't.
> "Q. You would agree that those are questions that are designed to elicit [an] incriminating response?
> "A. Yes. But he wasn't detained at the time. From my point of view.
> "Q. Okay. And we've already established you're not willing to commit as to whether or not he was detained from a reasonable person's point of view?
> "A. I do not feel like he was detained.
> "Q. Okay. At that point you asked Mr. Cleverly to consent to a search, didn't you?
> "A. Yes.
> "Q. And we're talking here the full—the real thing? The full blown search?
> "A. Yes.
> "Q. Okay. And at that point Mr. Cleverly was still not free to leave, was he?
> "A. I believe he was.
> "Q. What would indicate to a reasonable person in his circumstances he was free to leave?
> "A. It was a consensual encounter. We had a casual conversation in a consensual way.

"Q. It didn't start as a consensual encounter, did it?

"A. No.

"Q. The vehicle he was riding [in] was told to stop?

"A. Yes.

"Q. And he was told to get out of the car?

"A. Yes.

"Q. And he was told to submit to a pat down?

"A. Yes.

"Q. And he was told to stand in front of the vehicle?

"A. Uh-huh.

"Q. What about this would indicate this is a consensual encounter at this point?

"A. Like I said, our casual conversation. Me asking him consent [*sic*] to search and him giving it to me.

"Q. Okay. But there had been at that point nothing that would interrupt what had been going on, had there? You've not told Mr. Cleverly he was free to leave?

"A. I don't think I did."

After the permissible length of time for the traffic stop had expired, *i.e.*, when Cleverly should have been free from police detention, an officer told him to exit the vehicle, conducted a pat-down search of his person without asking for permission, and directed him to stand in front of the patrol car. The district court and Court of Appeals appeared to discount the importance of the initial, illegal pat-down search because it did not produce any incriminating evidence. But it is important here as an objective indicator to a rational person that his or her actions are still under police control, both verbally and physically. A reasonable and prudent person's assessment of the voluntary nature of an encounter with a police officer would be informed by the involuntary manner in which it commenced. An officer who tells a person to exit a vehicle, puts hands on that person without consent, and directs the person to stand in front of the patrol car has not signaled to that person that he or she is totally free to disregard the officer's questions, decline the

14

officer's requests, or otherwise terminate the encounter. Those detention indicators are not trumped by congenial conversation during the prolonged encounter.

Moreover, the State's argument that the initial pat-down was necessary for officer safety suffers from a logical disconnect. If, as the State contends, the investigatory detention had ended before the pat-down search, then that means that Officer Humig had conducted his entire official investigation without checking Cleverly for weapons. If the passenger did not present a threat to officer safety during the official investigation, an agreement to voluntarily hang out with the officer afterward should not have created such a safety risk. If the contention is that Cleverly's getting out of the vehicle was what presented the risk to officer safety, then Officer Humig created the risk himself. With the official investigation completed, as the State contends, Officer Humig (like Cleverly), was free to simply leave the scene. He did not have to tell the passenger to exit the vehicle.

Another piece of the totality of circumstances that refutes the notion that Cleverly was free to do what he pleased during the "voluntary encounter" period is the fact that Cleverly apparently felt compelled to ask permission from Officer Humig to do anything but stand at the front of the patrol car. He asked to smoke a cigarette, and the officer said that he could, albeit the officer said that normally he would hand the cigarette to the person in such circumstances. Pointedly, the officer did not tell Cleverly that he need not ask permission because he was not under police control. To the contrary, the officer granted the permission in a manner that indicated such permission was required under the circumstances, including possibly doling out the cigarette.

Later, Cleverly asked Officer Humig for permission to use his own cell phone to make a call. The officer denied this request, telling Cleverly that he could not make a phone call until after the search. If Cleverly was not being detained by the police and was

free to leave, Officer Humig should have had no authority to control Cleverly's use of his own cell phone. Officer Humig would later explain during testimony that he did not allow phone calls to be made during stops of this nature because of past incidents in which third parties would arrive at the scene and cause difficulties. But, of course, that statement contradicts the notion that a traffic stop had ended and a voluntary encounter begun. If Cleverly was truly free to leave, he was free to have a third party come get him.

The Court of Appeals looked at other circumstances that it felt counseled in favor of finding a voluntary encounter. For instance, it said that the presence of three officers at the scene—two of whom arrived as backup—was not "a threatening presence of several officers." *Cleverly*, 2015 WL 4716231, at *5. To the contrary, "[t]his court has also noted that the presence of more than one police officer may strongly suggest 'a coercive atmosphere.'" *Spagnola*, 295 Kan. at 1108 (quoting *State v. Thomas*, 291 Kan. 676, 686, 246 P.3d 678 [2011]). Likewise, the other factors listed by the panel, such as absence of aggressive language or tone, displayed weapons, or that the patrol car's emergency lights were not left on, are not compelling.

In sum, we hold that the totality of the circumstances does not support the State's theory that Cleverly voluntarily consented to prolonging his traffic stop detention beyond the time that the State agrees the detention ended, *i.e.*, after the issuance of a traffic citation to the driver, Jones. Consequently, when the police officer requested consent to search the cigarette packages, Cleverly was unlawfully seized.

*Voluntariness of Consent*

As noted, although the Court of Appeals opined that Cleverly was not being detained after the traffic stop ended, it nevertheless held that the nonconsensual pat-down search conducted during the "voluntary encounter" was unlawful. *State v. Cleverly*, No.

16

111,282, 2015 WL 4716231, at *5 (Kan. App. 2015) (unpublished opinion). The State did not seek review of that holding.

But the panel determined that the subsequent consent to search was not invalidated by the pat-down illegality because of the attenuation doctrine, which it described as providing that "''the poisonous taint of an unlawful search or seizure dissipates when the connection between the unlawful police conduct and the challenged evidence becomes attenuated.'' [Citations omitted]." *Cleverly*, 2015 WL 4716231, at *6. The panel quoted *Williams*, 297 Kan. at 381, for the attenuation doctrine factors, to-wit:

> "'(1) the time that elapsed between the illegality and the acquisition of the evidence sought to be suppressed, (2) the presence of any intervening circumstances, and (3) the purpose and flagrancy of the official misconduct. [Citations omitted.] But no one factor is controlling, and other factors also may be relevant to the attenuation analysis.'" *Cleverly*, 2015 WL 4716231, at *6.

The record does not definitively establish the length of time between the pat-down search and the cigarette package search. The Court of Appeals suggested that the absence of evidence of that time period was the defendant's fault for not including the patrol car video in the record on appeal. 2016 WL 4716231, at *5. Of course, as we have stated, it is the State's burden to prove the lawfulness of the search and that burden would include establishing an attenuation from the state actor's unlawful conduct.

Nevertheless, the principal disconnect in the panel's analysis is that *no* time elapsed between the illegality and the acquisition of evidence. When Officer Humig searched the cigarette package, he was unlawfully detaining Cleverly and had been doing so continuously since the unlawful pat-down search.

17

The panel found that the discovery of drug paraphernalia in the pickup in a location where Cleverly could have had access "created an intervening circumstance further attenuating the illegal drugs from the pat-down search." *Cleverly*, 2015 WL 4716231, at \*6. But Jones was arrested for the possession of the drug paraphernalia, not Cleverly. Moreover, Officer Humig testified that, at a point in time after the discovery of the drug paraphernalia, he had no articulable facts that would indicate that Cleverly possessed drugs. The officer's own testimony effectively refutes the notion that the discovery of drug paraphernalia in the vehicle created an intervening circumstance. The only potential intervening circumstance in this scenario is Cleverly's consent to search but only if it was freely and voluntarily given, as will be discussed below.

Because the panel found a transition to a voluntary encounter, it did not discuss the purpose and flagrancy of official conduct in extending the detention beyond that permitted by the traffic stop. The panel only addressed the unconstitutional pat-down, describing it as "technically illegal" and declaring that it was not flagrant and its purpose was valid, even though it did not fit into a recognized exception to the warrant requirement. *Cleverly*, 2015 WL 4716231, at \*6. To the contrary, the individual rights assured to all citizens through the Bill of Rights of the United States Constitution are not inconvenient technicalities designed to irritate governmental agents. Moreover, if a search is unconstitutional, it is illegal, and its purpose cannot be labeled "valid." Just shy of a half-century ago, the United States Supreme Court declared that "there can be no question, then, that [the law enforcement officer] 'seized' petitioner and subjected him to a 'search' when he took hold of him and patted down the outer surfaces of his clothing." *Terry*, 392 U.S. at 19. Given that Officer Humig testified that, from his point of view, Cleverly was not being detained and that "[i]t was a consensual encounter," his seizure and search of Cleverly was a flagrant violation of long-standing constitutional law.

18

Turning to the flagrancy and purpose of Cleverly's illegal seizure, from and after the termination of the traffic stop, we discern nothing that would ameliorate or attenuate that illegality. The officers recognized that their constitutional authority to involuntarily detain the occupants of the vehicle had terminated with the issuance of Jones' ticket. Indeed, we have the unusual case in which the record includes an officer's statement of the purpose of the unlawful detention of the passenger, which was to attempt to extract the driver's consent to search the vehicle. Attempting to get the driver to waive his constitutional rights is no justification for violating the passenger's Fourth Amendment rights.

In short, Cleverly was unlawfully detained from the termination of the traffic stop until the search of his cigarette packages. There was no transition from an investigatory detention to a voluntary encounter with respect to Cleverly. Further, there was no attenuation of Officer Humig's continuing unlawful detention of Cleverly.

VALIDITY OF CONSENT TO SEARCH

Intertwined with Cleverly's status as an illegal detainee is the question of whether his consent to search his cigarette package was valid. Generally, a valid consent requires: (1) clear and positive testimony that consent was unequivocal, specific, and freely given, and (2) the absence of duress or coercion, express or implied. *State v. James*, 301 Kan. 898, 909, 349 P.3d 457 (2015) (citing *Thompson*, 284 Kan. at 776). In *Smith*, we described the connection between an illegal seizure and a consent to search as follows:

> "An unconstitutional seizure may infect or taint a consent to search as well as any
> fruits of a law-enforcement-citizen encounter if the nature of the seizure renders the
> consent to search involuntary. Conversely, a voluntary consent to search can purge the
> primary taint of an illegal seizure where the connection between the lawless conduct of

19

the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint." 286 Kan. 402, Syl. ¶ 3.

As discussed above, the lawless conduct of the police in this circumstance was ongoing at the time Cleverly impliedly gave his consent to search the cigarette package by handing it to Officer Humig. In other words, there was no attenuation of the taint. Moreover, we have equated the analysis of the character of the encounter with the analysis of the voluntariness of a consent:  "Once an involuntary encounter has occurred, the same factors that go into determining whether an encounter is voluntary may reasonably apply to whether the consent for a search was voluntary." *Spagnola*, 295 Kan. at 1108. There, we said that a person "standing outside of his car in the presence of more than one police officer, one of whom had arrived as backup support," was not part of "an environment in which it can be said that consent was voluntarily given free from coercion." *Spagnola*, 295 Kan. at 1108. Here, we had two officers arriving in separate patrol cars to back up the original detaining officer, together with other post-traffic stop conduct by the officer—both expressed and implied—that would invoke duress and coercion in a rational citizen.

As we said in *Spagnola*, it is "not a new principle of law," because *Smith*, 286 Kan. at 419, held that even where there is a consent to search, "a detention that exceeds the scope of or is unrelated to the stop violates the Fourth Amendment." 295 Kan. at 1109. Moreover, we reject the suggestion in *State v. Hill*, No. 113,771, 2016 WL 3031246, at *5 (Kan. App. 2016) (unpublished opinion), that *Smith* is outdated because of *State v. Morlock*, 289 Kan. 980, 986-89, 218 P.3d 801 (2009), which recognized that officers can ask the driver and passengers questions unrelated to the initial purpose of the stop, so long as the length of the stop is not measurably increased. Simply put, questions are different from searches.

20

In short, under the totality of the circumstances of this case, the nature of Cleverly's unlawful seizure rendered his consent to the search of the cigarette package involuntary and, consequently, invalid. The district court erred in refusing to suppress the evidence seized from the cigarette package; the Court of Appeals erred in affirming that denial.

Before ending, we pause briefly to reject the State's creative, yet unavailing, theoretical arrest argument. The State contends that an objectively reasonable officer would have been justified in arresting Cleverly for the seat belt violation and, thereafter, the theoretical arrest *could* have supported a search incident to arrest, which theoretical search *might* have produced the methamphetamine evidence. See K.S.A. 22-2401(d) (law enforcement officer authorized to arrest when officer directly observes misdemeanor being committed). Accordingly, since there was a potential legal pathway through which the evidence might have been obtained, the district court did not err in admitting the evidence. See *State v. Shehan*, 242 Kan. 127, 131, 744 P.2d 824 (1987) (appellate court can affirm a district court's decision as being correct for the wrong reason).

First, the search incident to arrest exception to the warrant requirement applies *after* an arrest has been made; it does not apply where there is a possibility that an arrest might occur. See *Knowles v. Iowa*, 525 U.S. 113, 116-17, 119 S. Ct. 484, 142 L. Ed. 2d 492 (1998) (warrantless search incident to arrest not justified on basis that officer technically could arrest for traffic violation where officer did not actually make an arrest). Second, the search incident to arrest exception is not unfettered. See *Arizona v. Gant*, 556 U.S. 332, 339, 351, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009) (limiting the area of search incident to arrest). It was not reasonable to believe the cigarette package contained a weapon or destructible evidence to prove Cleverly failed to wear his seat belt. Finally, the State failed to establish that the methamphetamine would have inevitably been

21

discovered through a standard search incident to arrest. In short, what might have been does not trump what did occur.

Reversed and remanded.